## APPEAL OF H. S. CROCKER CO.

Docket No. 4581.    Decided November 16, 1926.

1. Where two corporations are affiliated the consolidated net income is to be computed as for one corporation.

2. Where the parent corporation acquires the stock of its subsidiary at its book value and subsequently sells it at its book value, no profit or loss to the affiliated group results.

*Robert N. Miller, Esq., Virgil Y. Moore, Esq., Andrew T. Smith, Esq., John E. McClure, Esq.,* and *N. L. McLaren, C. P. A.,* for the petitioner.

*George G. Witter, Esq.,* for the Commissioner.

*John W. Davis, Esq.,* and *E. H. Hart, Esq.,* as *amici curiae,* on behalf of United States Rubber Co.

Taxpayer appeals from the determination of a deficiency of $53,654.85 in income and profits taxes for the fiscal year ended March 31, 1919.

### FINDINGS OF FACT.

1. The H. S. Crocker Co., of San Francisco, Calif., hereinafter sometimes called " Crocker," was incorporated in January, 1891, and was engaged in the business of stationers, printers, lithographers, bookbinders, copper-plate engravers, publishers, etc., from date of incorporation to March 31, 1919, when it sold all of its assets (except certain real estate, notes, Government certificates, and accounts receivable), for the sum of approximately $1,150,000.

2. In 1912, Cunningham, Curtiss & Welch Co., hereinafter sometimes referred to as " Cunningham," had outstanding 288 shares of capital stock of a total authorized issue of 300 shares. From 1912 to March 31, 1919, the issued and outstanding stock of Cunningham remained unchanged. It operated a business in Los Angeles similar to that conducted by Crocker in San Francisco.

3. In 1912, Crocker purchased for $133,500, 256 shares of the issued and outstanding stock of Cunningham. The purchase price of $133,500 was based on the then book value of the stock of Cunningham.

4. Crocker continued to hold its original purchase of the stock of Cunningham until the close of its fiscal and reporting period, March 31, 1919. On that date it sold, for the sum of $234,000.96, the 256 shares of the stock of Cunningham theretofore acquired by it. This price was substantially equivalent to the then book value of the stock, the only adjustment made being that inventories were taken at cost or market, whichever was lower.

5. Between the date of purchase in 1912 and March 31, 1919, Cunningham earned substantial profits. Part of these profits was allowed to accumulate as earned surplus. The difference between the purchase price of the stock of Cunningham in 1912 of $133,500 and the sale price in 1919 of $234,000.96 is equivalent to 256/288ths of such accumulated profits.

6. The Commissioner held Crocker and Cunningham to be affiliated for the fiscal years ended March 31, 1918 and 1919, and computed the taxes on the basis of a consolidated return. He included in the

consolidated income for 1919 an alleged profit of $100,500.96, claimed by him to have been realized by Crocker from the sale on March 31, 1919, of the shares of stock of Cunningham acquired in 1912.

7. Federal taxes have been assessed against and paid by Cunningham from year to year on the basis of its income, between 1912 and March 31, 1919.

### OPINION.

PHILLIPS: This case arises under section 240 of the Revenue Act of 1918, and the issue before the Board is this: Does the purchase by the parent company of the stock of its subsidiary at the then book value of the stock, and the sale of the stock at a later date at its then book value, result in taxable income or deductible loss? It is admitted that the companies were affiliated during the taxable year involved.

Section 240 (b) (1) of the Revenue Act of 1918 says, in part, that:

For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others.

Section 240 (a) says, in part:

That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title and Title III, and the taxes thereunder shall be computed and determined upon the basis of such return.

And further:

In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit.

The Commissioner found that the taxpayer and its subsidiary were affiliated within the meaning of section 240 and accordingly computed invested capital and net income on the basis of a consolidated return, including, however, as part of the consolidated income the sum of $100,500.96, the difference between the purchase price and the sale price of the stock of the subsidiary, which is likewise the pro rata portion of the undistributed profits attributable to the stock of the subsidiary owned by the taxpayer during the period of ownership. The Commissioner thus seeks to impose an income tax against the affiliated group upon an amount which has already been taxed to one of the affiliated group, in part under the Act of 1918 and in part under acts in effect prior thereto. It is his contention that the net income of each corporation in the group is to be computed, intercompany transactions wiped out, and that the result, without any further adjustments, is the consolidated income.

It is our conception of the law that, for purposes of taxation, the affiliated group must be considered as a single economic unit. The requirement with respect to computing the taxes of an affiliated group upon the basis of a consolidated return was first introduced into the law to prevent avoidance and resulting injustice, either to the Government or to the taxpayer, as the case might be, and not to create that situation. The normal treatment in the case of an affiliated group as a single economic unit, therefore, is to disregard the internal structure, to break down the separate legal existence of the constituent members, and to treat them in all respects, so far as taxation is concerned, as one.

In the *Appeal of American La Dentelle, Inc.*, 1 B. T. A. 575, we said:

From July 1, 1919, however, Congress has said that the generally recognized principle of corporate identity was to be overridden for the purpose of the income and profits tax and that a consolidated return should be filed "if substantially all the stock of two or more corporations is owned or controlled by the same interests," which is the situation here. From July 1, in other words, the separate existences ceased for tax purposes just as effectually as if under a State statute the corporations had been consolidated for all corporate purposes. A new tax status was created.

In the *Appeal of Frank G. Shattuck Co.*, 2 B. T. A. 7, we said:

The law provides that affiliated corporations shall make a consolidated return. To consolidate is defined as "to combine; to cause to become united; to merge." The two corporations are to be regarded as one business unit.

We have said that the object of the law requiring the computation of the taxes of an affiliated group on the basis of consolidated returns was to prevent tax avoidance and resulting injustice. Certainly, if that was the object of the Congress—and there is no reasonable doubt that it was—then the purpose of the Congress is defeated by the Commissioner's interpretation of the law. If the computation is made on the basis of a single economic unit, then the same tax—the invested capital and the income being the same—will be found for a parent and a subsidiary in a given year as that found for a corporation discharging through a branch like functions to those of the subsidiary. Under the Commissioner's theory, however, that is by no means so.

The taxable group, if the Commissioner's theory were followed, would have to account twice for the same profit or would be allowed a double deduction of the same loss. We do not believe the provision for a consolidated return intends any such result. We do not believe that through the medium of a subsidiary corporation it was possible, under the Revenue Act of 1918, for a corporation to cause its subsidiary to have losses so that its assets became depleted, and then ʰᵛ selling the stock of that subsidiary to have the deduction a

second time, and the same rule necessarily follows as to profits. No such claim as is here made by the Commissioner could be made in the case of a company selling a corresponding unincorporated branch of its business. It was to avoid just such inequities in taxation between two business units differently organized, as well as to prevent tax evasion by intercompany transactions, that the provision for consolidation was enacted.

The effect of consolidation, in the language of congressional committees quoted in other decisions of the Board relating to affiliations, is to treat that as an economic unit which really is an economic unit. The statute should be so interpreted that consolidation can not be so carried out as to make evasion possible, or so carried out as to make accidental differences result in tax. This can only be done by disregarding corporate lines in computing the income and treating the affiliated group as one corporation. When this is done it is clear that a transaction such as we have here results in no profit or loss to the affiliated group, being a change in form of a profit or loss previously realized and reflected in the assets or liabilities of one of the group.

There is the further consideration that, under the affiliation provisions of the statute, the acquisition by one company of the stock of another, thereby creating affiliation, creates no additional investment in the affiliated group. By the act which creates the affiliation the group acquires a part of its own capital stock. The affiliation continues its existence until the stock of the subsidiary is disposed of by the parent corporation. Considering the affiliated group as an entity, the sale is a disposition by it of a portion of its capital stock. We have heretofore held that dealings by a corporation in its own capital stock give rise to no profit or loss. *Appeal of Simmons & Hammond Mfg. Co.*, 1 B. T. A. 803.

We are consequently of the opinion that no taxable profit resulted from the transaction here in question.

> *Order redetermining the amount of the deficiency will be entered on 15 days' notice, under Rule 50.*

ARUNDELL, GREEN, LOVE, TRAMMELL, and TRUSSELL dissent.