OBENCHAIN-BOYER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24923.    Promulgated November 20, 1929.

*John E. Enrietto, Esq.*, for the petitioner.
*C. C. Holmes, Esq.*, and *Philip M. Clark, Esq.*, for the respondent.

OPINION.

LANSDON: The petitioner here raises a principal and an alternative issue. It contends (1) that the sale of all the stock of a subsidiary corporation, which it had previously acquired at a price not in controversy, is a transaction that results in neither gain nor loss and relies on our decisions in *Baker-Vawter Co.*, 7 B. T. A. 594, and *Remington Rand, Inc.*, 11 B. T. A. 773; and (2) that, even if such sales result in gain or loss, any surplus earnings of the subsidiary corporation that have been reinvested and permitted to remain in the business must be regarded as additional cost of the stock sold.

*Remington Rand, Inc., supra,* is exactly on all fours with the instant proceeding. Our decision in that matter on the first point involved was reversed by the United States Circuit Court of Appeals in an opinion in which the court says:

> The theory and purposes of affiliation have been explained in the Treasury Regulations (Reg. 45, Art. 631) and have recently been commented upon by this court. *Ice Service Co.* v. *Commissioner*, 30 F. [2d] 230; *Commissioner* v. *Adolph Hirsch & Co.*, 30 F. [2d] 645. We cannot find in the letter of section 240, nor in the theory which underlies this legislation, anything which requires that gains or losses be disregarded when stock is sold to outsiders by a corporate owner affiliated with the corporation which issued the stock. Such a sale terminates the affiliation which had resulted from its purchase. Both the purchase and the sale took place outside the period of affiliation and were made by the seller for its own account, not for the account of the affiliated group—as much so, we think, as if the parent company had purchased Blackacre before the affiliation began and had sold it after the affiliation ceased. We cannot agree that the transaction was the same as the purchase and sale by a corporation of its own shares, even if it be conceded that dealings by a corporation in its own shares give rise to neither taxable profit nor deductible loss, as was held in *Appeal of Simmons & Hammond Mfg. Co.*, 1 B. T. A. 803. In deciding the *Baker-Vawter* case the Board relied upon its prior decisions in *Appeal of Farmers Deposit Nat. Bank, supra,* and *Appeal of H. S. Crocker Co.*, 5 B. T. A. 537. In each of these cases it was assumed that the sale did not disturb the existing affiliation during the tax year under consideration. In *Utica Knitting Co.* v. *United States* (reported in U. S. Daily, May 29, 1929), the Court of Claims interpreted these cases as holding that the Commissioner could not tax as income the gain on intercompany transactions. Whatever may be the rule where affiliation continues after the sale, under the facts of the instant case we think the Board erred in ruling that neither taxable gain nor deductible loss resulted to the parent company from the sale of the stock.

Since the above cited opinion was handed down the Supreme Court has denied certiorari thereon and this Board has applied the rule therein established as to the first point in its decision in *Riggs National Bank*, 17 B. T. A. 615. Following the opinion of

the Court of Appeals in *Remington Rand, Inc.*, and our own decision in *Riggs National Bank*, we hold that in the conditions stipulated herein the transaction here involved was one that might result in taxable gain or deductible loss.

Having reached the conclusion set forth above, it is necessary now to determine whether the receipt of net income by the subsidiary corporation in each of the taxable years that ended in the period of the petitioner's stock ownership thereof and the reinvestment of such income in property by such subsidiary are facts that must be considered in arriving at a basis for computing gain or loss from the transaction in question. On this issue the Board indicates in *Riggs National Bank, supra*, that in the conditions of that case it does not accept the reasoning and decision of the Court of Appeals in *Remington Rand, Inc.*, in which the court said:

Concededly a gain of $15,000 was realized, unless the parent company may take into account as additional cost of the stock the subsidiary's accumulated earnings of $28,454.35. It is argued that the parent company could have had its subsidiary declare its net profits as dividends, without subjecting the parent company to any tax—by reason of section 234 (a) (6) ; and that it could then have invested such dividends in the business of the subsidiary, in which event they would be treated as an addition to the price paid for the stock—Reg. 45, Art. 543. In other words, we are urged to hold that the accumulation of earnings by the subsidiary was a constructive receipt of dividends and reinvestment of them by the parent company. But the same argument could be made with equal force in respect to an individual or corporate owner of stock sufficient in amount to control the board of directors of the subsidiary yet insufficient to result in affiliation. Tax liabilities must be determined by what in fact was done. See *United States* v. *Phellis*, 257 U. S. 156, 172. The fact is that no declaration of dividends and no reinvestment of them has occurred in either case, and it would seem unreasonable to accept the theory of constructive receipt and investment in the one case but not in the other. Where affiliation is absent, no one doubts that the theory would be rejected; to accept it would contradict the theory of *Eisner* v. *Macomber*, 252 U. S. 189.

Again, it is urged that a failure to treat the accumulated earnings as an addition to the cost of the stock will produce the inequitable result of double taxation, because the earnings have already been taxed as income of the affiliated group. But double taxation of this character will exist though there be no affiliation between the owner of the stock and the corporation which issued it, and is, as pointed out in *Hellmich* v. *Hellman*, 276 U. S. 233, 237, the ordinary incident of a profitable sale of stock. We hold, therefore, that the sale resulted in taxable gain of $15,000.

Notwithstanding their affiliated status prior to January 1, 1922, the two concerns were separate corporate entities during the entire period in which the subsidiary was earning the net income which the petitioner claims should be included in the basis for determining gain or loss resulting from its sale of all the stock of such subsidiary.

It is true that for one of the taxable years ending within the period of the petitioner's stock ownership the two corporations made a consolidated return, but in the absence of proof to the contrary, we must presume that the regular procedure was followed and that each of the affiliated concerns paid its own proportion of the tax due on such return. Certainly in the years in which separate returns were made each corporation paid its own taxes. It is evident, therefore, that the petitioner has paid no tax on the income earned by its subsidiary during the period of its ownership of the stock of that concern.

The petitioner contends, however, that inasmuch as it was the owner of all the stock of its subsidiary, the net income thereof constructively, at least, was its income and therefore the reinvestment of such income in the property of the subsidiary should be regarded as additional cost of the stock in question. As owner of all the stock of its subsidiary, the petitioner had ample power to make such income its own by the simple process of causing dividends in the amount thereof to be declared and paid to it. This was not done. In our opinion, the earnings of the subsidiary never became the income of the petitioner either actually or constructively, and in any event it is clear that in the circumstances stipulated such earnings during the period of affiliation in no way affected its tax liability. These facts clearly distinguish the instant proceedings from *Riggs National Bank, supra*. In that case the facts show that the operating loss which the subsidiary sustained during the period of affiliation was deducted from the gross income of the parent corporation with a corresponding reduction of its tax liability. In the instant proceeding the income of the petitioner was not affected, either by the gains of the subsidiary or the tax paid thereon. The most that can be said in support of the petitioner's claim that the determination of the Commissioner herein proposes double taxation is that the tax on the income of the subsidiary was paid from funds which after performance of certain conditions would have become its property. Whatever inequitable situation exists, if any, results not from an event that occurred but from the petitioner's own failure to exercise its powers as the sole stockholder of the subsidiary. This is not enough. As pointed out by the learned Judge in *Remington Rand, Inc., supra*, " Tax liability must be determined by what in fact was done." The determination of the Commissioner is approved.

Reviewed by the Board.

*Decision will be entered for the respondent.*