FIRST STATE BANK OF BRACKETTVILLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12876. Promulgated December 29, 1927.

*Charles F. Byers, Esq.*, for the petitioner.
*Harold Allen, Esq.*, for the respondent.
*Claude Pollard, Esq.*, Attorney General of Texas, *C. W. Trueheart, Esq.*, and *R. B. Cousins, Jr., Esq.*, as *amici curiae.*

OPINION.

Love: The petitioner takes the position that the amount levied and collected from it during 1920, for the maintenance of the Depositors' Guaranty Fund (hereinafter called the Fund) is an ordinary and necessary business expense, and is, therefore, deductible.

The respondent, on the other hand, takes the position that the amount so paid into the Fund is not deductible. In support of this position he urges, first, that if the amount in question should be classed as an expense, it does not constitute a necessary expense because under the State law the petitioner could elect to operate under the Fund or under another system, the depositors' bond security system; and second, that while the petitioner gave up control of the amount paid into the Fund, that amount was impressed with a trust for the return or relinquishment to the petitioner, upon withdrawal from the plan of protection, of that portion of the amount so paid which had not been appropriated to carry out the purposes of the act creating the Fund. In other words, it is the respondent's second contention that because of the petitioner's undetermined reversionary interest in the Fund as of December 31, 1920, no part of the amount

so paid in during 1920 can be classed as an expenditure, that is, a subtraction from gross income.

We are of the opinion that the respondent's first contention is not, in view of the Texas statutes, well founded. Article 437, Revised Statutes of Texas, 1925, provides:

*Protection of depositors.*—Every banking institution except savings banks, incorporated under the banking laws of this State shall protect its depositors either by availing itself of the depositors' guaranty fund, or by the depositors' bond security system. A choice of one of the methods prescribed shall be exercised by the holders of the majority of the stock; and the president or cashier of such bank shall notify the Commissioner by registered mail of such action. No such institution shall be permitted to receive deposits until it shall have complied with the provisions of this chapter. (Acts, 1909, 2nd C. S. p. 406.)

It is clear, therefore, that in 1920, the petitioner, or any other state bank of Texas, had of necessity to elect one of the two methods of protecting depositors described by law before it could engage in the conduct of its business. The petitioner elected to operate under the Fund, and, as will be pointed out hereinafter, it was under legal compulsion to make certain payments thereto.

We are not concerned with the question as to which of the two methods of protecting its depositors was more advantageous to the petitioner or with the question as to the relative costs thereof. The fact remains that petitioner had to elect one of two methods as a condition to doing business, and its action in that respect must be regarded as the exercise of business discretion. The mere fact that it chose one method and not the other has no effect upon the element of business necessity. Clearly, therefore, if the amount paid in 1920 into the Fund can be classed as an expense, it constitutes a necessary expense.

There remains for our consideration, therefore, the question as to whether the amount paid into the Fund in 1920 was deductible expense incurred in conducting petitioner's business.

The status of the amount paid by petitioner in 1920 into the Fund is fixed by the law of Texas then in force. Article 443, Revised Statutes of Texas, 1925, provides:

*Assessments for fund:* For the purpose of creating a Depositors' Guaranty Fund, any bank or bank and trust company which shall elect to secure its depositors under the Guaranty Fund Plan if its application is approved by the State Banking Board, shall pay to said Board on January first an initial payment of a sum equal to one per cent of its average daily deposits for the year next preceding November first prior to the date of payment, and annually thereafter, one-fourth of one per cent of its average daily deposits for the preceding year ending on November first. Any bank or bank and trust company which shall not have been in operation for one year at the time of such initial payment, shall pay to the Board a sum equal to three per cent of its capital stock and surplus, which sum shall constitute a credit fund subject to adjust-

ment at the end of one year, on a basis of its average daily deposits for the preceding year ending November first, as provided for other banks. In computing the aggregate amount of such average daily deposits, United States, State or other public funds if otherwise secured, and the deposits of its savings department as provided in Chapter Six of this title, shall not be included. When the amount available in said guaranty fund shall reach five million dollars, the Commissioner shall notify all banks and bank and trust companies subject to the provisions of this chapter of that fact at least thirty days before the next annual payment; and thereafter the banks and bank and trust companies participating shall not pay any further amount into said guaranty fund until it shall be reduced to a sum below five million dollars or below the amount of the guaranty fund on January first preceding. In the event of necessity to meet an emergency at any time, and not otherwise, the Banking Board shall have authority to require the payment for the current year of not exceeding two per cent of such daily average deposits, or such part thereof as may be necessary to restore said fund to the maximum above named, or to its amount as of January first preceding, or to meet the emergency. The first payment herein provided for by any bank or bank and trust company which shall hereafter elect to secure its deposits under the Depositors' Guaranty Fund, shall be made by said corporation to said Banking Board without reference to said maximum amount in said Depositors' Guaranty Fund. (Id.; Acts 1st C. S. 1921, p. 63.)

It will be observed that, by the above-quoted provision of law, the petitioner, having elected to operate under the Fund, was required to make definite contributions at periodical times of amounts prescribed by the statute, such amounts constituting the so-called annual assessments. In addition, the petitioner would, on call from the State Banking Board, have to pay other amounts, the limit of which is prescribed by law. Any amount paid, pursuant to call from the Banking Board, other than the annual assessments, constitutes the so-called special assessment.

The above-quoted provision of law provides for annual statutory assessments to create and maintain the Fund and it also provides for special assessments to replenish it. In any event the payments pursuant to either type of assessment are required by law to be made to the Fund. As hereinbefore stated, the amount, the deductibility of which is in dispute, was paid by petitioner pursuant to annual statutory assessment for 1920.

The method of paying amounts into the Fund is prescribed by law. Article 444, Revised Statutes of Texas, 1925, provides:

*Guaranty Fund.*—The Depositors' Guaranty Fund shall be paid to the State Banking Board as follows: each bank or bank and trust company shall pay twenty-five per cent of the payment required of it in cash. Such sum shall be deposited by the Board for safe keeping only, with the State Treasurer as bailee for the State Banking Board, and paid out by the Treasurer on warrants drawn by the order of said Board. Said fund shall never be diverted from the purpose specified in this chapter, nor shall it ever be considered State funds. The remaining seventy-five per cent of such payments shall be placed to the credit of the State Banking Board by each such bank or bank and trust com-

pany upon its books as a demand deposit subject to check upon the order of the Board. (Acts 2nd C. S. 1909, p. 406.)

From an examination of this provision, it will be observed that the amount paid into the Fund in 1920 by the petitioner pursuant to annual statutory assessment, passed out of its control and beyond its jurisdiction, and title thereto passed to the State Banking Board. Twenty-five per cent of the amount was required to be paid in cash to the State Banking Board and 75 per cent of it was required to be placed to the credit of the Banking Board, subject to its order or check. The amount credited on petitioner's books therefore, became nothing more or less than a demand deposit of the Banking Board.

The Commissioner, however, in denying the petitioner the right to deduct the amount so paid into the Fund, takes the position that under the law of Texas the petitioner had a reversionary interest in the amount paid in and that inasmuch as the amount of such reversionary interest was undetermined on December 31, 1920, no part thereof can be considered an expense for the reason that some or all of it may revert to petitioner.

It is true that at some unascertained time the petitioner might receive from the Fund some or all of the amount paid in in 1920. Article 445, Revised Statutes of Texas, 1925, provides:

*Refunding to banks.*—In the event of the voluntary liquidation of any bank or trust company operating under the provisions of the Depositor's Guaranty Fund, when it shall be made to appear to the State Banking Board that all depositors have been paid in full, said board shall return to such bank or trust company the pro rata part paid by it into such fund when unused. *Or, in the event any bank or bank and trust company that has been operating as a guaranty fund bank shall have ceased to operate as a guaranty fund bank and adopted the bond security system under this chapter, its bond having been approved by the county judge and filed with the Banking Commissioner of Texas, as provided by law, said board shall return to such bank or trust company the pro rata part paid by it into such fund when unused.* (Acts 1925, p. 26, 39th Leg., ch. 9 P. 1.) (The portion in italics was added by amendment in 1925.)

It is clear, therefore, from the foregoing provision of law that during 1920 the petitioner was not entitled to any part of the amount paid into the Fund. As a condition precedent to the possibility of a refund, the petitioner would have to voluntarily liquidate and pay all of its outstanding obligations to all depositors in full. There was no statutory authority under which a refund could be made so long as petitioner continued to do business as a bank. It is equally clear that so long as the petitioner continued to do business, the Fund by reason of the failure of member banks might become depleted to such extent that petitioner's reversionary interest in the amount paid in in 1920 would be entirely extinguished.

The ultimate facts concerning the amount paid in 1920 into the Fund by the petitioner are these: There was a fixed and definite

liability on the part of the petitioner to pay into the Fund a definitely ascertainable amount, as prescribed by law. Upon the happening of a specified contingency, namely, voluntary liquidation, or in and after 1925, voluntary liquidation or change to the bond security system, the petitioner might recover all or part of the amount paid in, the amount recovered being dependent upon the condition of the Fund at that time.

We are of the opinion that the petitioner having paid the amount in question pursuant to a definite liability fixed by law, the contingent possibility of a refund of some or all of the amount so paid does not render the amount a nondeductible item. It seems clear that if the right to the deduction is denied the petitioner, its net income for the year in question could not be rightly determined. We are of the further opinion, therefore, that the amount paid into the Fund was an expense incurred and properly attributable in and to the conduct of petitioner's business during the year 1920. See *American National Co.* v. *United States*, 274 U. S. 99. Our conviction that the amount so paid by the petitioner in 1920 into the Fund is deductible from gross income for that year, is fortified by the Board's reasoning and decision in *Hibbard, Spencer, Bartlett & Co.*, 5 B. T. A. 464. If the contingency ever arises upon which a refund is realized out of the payment made in 1920, the amount so realized should be treated as income for the year in which it is realized. ·

We conclude, therefore, that the petitioner is entitled to deduct from gross income for the year 1920, the amount of $2,474.04, which amount was paid in that year into the Fund as the result of an annual assessment.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

TRAMMELL and GREEN dissent.