MAURICE L. GOLDMAN, LEO M. LEVY, A. A. BATH, AND H. R. SCHRADZKI, EXECUTORS, ESTATE OF ABE M. LEVY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18330. Promulgated April 11, 1929.

*J. L. Lockett, Esq.*, for the petitioners.
*T. M. Mather, Esq.*, for the respondent.

1342

OPINION.

LITTLETON: The record upon which this proceeding is submitted consists solely of those parts of the petition which are admitted by respondent's answer, affirmative admissions in respondent's answer and evidence on one disputed fact, to wit, the amount which was paid by the firm of Levy Bros. prior to the death of Abe M. Levy (hereafter referred to as decedent), either to him or on his account. At the hearing petitioners, while conceding that the amount of $27,092.64, which was actually received by or paid on account of decedent during his life out of the earnings of the firm of Levy Bros. for the calendar year 1924, is subject to income tax, contend that no part of his share of income which was not so received or paid is taxable, or, to state their contention in another way, the decedent should be charged with only the amounts actually paid to or for him during his lifetime and that the large earnings of the partnership during his lifetime which were not actually received should not be included. They further contend that the method employed by respondent in computing the income of decedent from the partnership was erroneous. The only fact we have before us on the latter point is the admission in respondent's answer to the effect that he "in determining the balance on the books of account of Levy Bros. as of November 10, 1924, considered only actual receipts and disbursements up to said date." The effect of this admission will be referred to later in this opinion. We assume for the purpose of this opinion that the articles of partnership contained no provision authorizing Haskel Levy to continue the business of the partnership after the death of decedent.

At the outset, it is well to consider the ultimate effect of the first contention. It is clear that decedent's share of the net earnings of the partnership as of the date of his death, whether or not actually distributed, was income. Such share of the earnings was not income to his estate. *Nichols* v. *United States*, 64 Ct. Cls. 241; certiorari denied, 277 U. S. 584. Cf. *Walter R. McCarthy, Executor,* v. *Commissioner,* 9 B. T. A. 525. With certain well defined exceptions, none of which are applicable, section 213 of the Revenue Act of 1924 includes in gross income "gains or profits and income derived from any source whatever." There is no provision in that section or in that revenue act which declares that such income is exempt from tax. We, therefore, have before us income which is not exempt and which can escape taxation, if at all, only by reason of the provisions of

section 218 of the Revenue Act of 1924. If any part of the income of decedent from the firm escapes taxation, then the revenue act " has missed so much of the general purpose that it expresses at the start." *Irvin* v. *Gavit*, 268 U. S. 161; 5 Am. Fed. Tax Rept. 5380. Petitioners rely upon section 218(a) of the Revenue Act of 1924 and upon *Appeal of R. W. Archbald, Jr., et al., Executors,* 4 B. T. A. 483.

Section 218(a) reads:

SEC. 218. (a) Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year, or, if his net income for such taxable year is computed upon the basis of a period different from that upon the basis of which the net income of the partnership is computed, then his distributive share of the net income of the partnership for any accounting period of the partnership ending within the taxable year upon the basis of which the partner's net income is computed.

The above subdivision provides how the income of partners shall be returned and taxed. It gives full recognition to the common law rules governing partnerships and partners. It treats a partnership not as a distinct taxable entity, but taxes the partners individually. It follows the common law concept that each partner is, within the scope of the partnership business, the agent of the other partners, and, therefore, that receipt by one is receipt by all, with the consequent result that each partner is in receipt of his share of the partnership income " whether distributed or not." Following this principle, it further provides that each partner shall return for taxation his share, whether distributed or not, of the partnership income for the taxable year. Recognizing the fact that the taxable year of the partnership might be a different year from that of a partner, provision is made to cover such a state of case. In this proceeding, we are not concerned with this question, since the taxable year of the decedent coincides with the taxable year of the partnership. Here, decedent was required in his return for each calendar year to include therein his share of the partnership income for the taxable year from the partnership, the two taxable years being the same. He was not required to return more or less than his share, whatever that may have been. It was his share that he was required to return and not the share of some other taxable entity which might have acquired an interest in his property rights during the taxable year. Neither would such other taxable entity be required to return the income of decedent. The term " partnership," as used in section 218, refers only to ordinary partnerships. *Burk-Waggoner Oil Assn.* v. *Hopkins*, 269 U. S. 110; 5 Am. Fed. Tax Rept. 5663. The general rule is that such partnerships are terminated by the death of a partner, except where provision is made to preserve the continuity in

case of death, and we have no evidence that the latter contingency was true in this case. This rule prevails in Texas. Upon the death of a partner the surviving partner is entitled, without interference, to take over the partnership assets in trust, first for the creditors and then for the estate of the deceased partner. As such fiduciary he is authorized to dispose of the partnership assets, even to the extent of executing in his name, as surviving partner, a deed of assignment for the benefit of creditors. The only duty and the only right of a surviving partner is to wind up the partnership affairs. If the surviving partner continues the business of the partnership, he does so at his own risk, and the estate of the deceased partner is entitled either to interest on the value of the decedent's investment in the partnership, or, at its election, to an equitable share of the profits. This share is not the share prescribed by the partnership articles, but is the share to which the estate is equitably entitled when all the facts are taken into consideration, including the fact that the estate is not a partner. See cases *Rogers* v. *Flournoy*, 21 Tex. Civ. App. 556; 54 S. W. 386; *Amarillo National Bank* v. *Harrell* (Tex. Civ. App.), 159 S. W. 858; *Douthart* v. *Logan*, 190 Ill. 243; 60 N. E. 507; *Robinson* v. *Simmons*, 146 Mass. 167; 15 N. E. 558; *Emerson* v. *Senter*, 118 U. S. 3. From the foregoing it may be deduced that the death of decedent terminated the partnership to the same extent as it ended his earthly existence; that from the date of decedent's death Haskel Levy was no longer a partner, but only a liquidating agent or trustee for the benefit, first, of the firm creditors and then for himself and for the estate of decedent, which was a distinct taxable entity; that any income that may have been earned thereafter was not partnership income but the income of Haskel Levy and decedent's estate; and that section 218 has no application to such income.

If, on November 10, 1924, decedent, while living, had sold his interest in the partnership to Haskel Levy, reserving to himself his share of the partnership income up to the date of sale, it would have been his duty after the end of the calendar year to have returned such share of income, whether distributed or not, even though it was income for but a part of the taxable year. It matters not within what part of a taxpayer's accounting year income is received. What is required is that at the end of the accounting period income received in any part of that period must be returned. We can perceive no difference in principle between the supposed case and what actually took place. The only difference in fact is that instead of decedent making his return at the end of the accounting period, this duty devolved upon his executor.

Having reached the conclusion that decedent's executor should have returned at the end of the year 1924 the share of the partnership

income for that year to which decedent was entitled as of the date of his death, whether distributed or not, we are met with the contention that this results in shortening the accounting periods of both decedent and the partnership. It is clear that this rule does not shorten the accounting or taxable period of decedent, since his executor was required to report all *his* income for the whole year. Neither does it shorten the accounting period of the partnership. It only recognizes the fact that both decedent and the partnership ceased to exist within the accounting period and that, after the death of the one and the termination of the other, neither could be in receipt of taxable income, for the obvious reason that neither thereafter had actual or legal existence.

Since there was no partnership after November 9, 1924, it follows that the profits of the partnership for the period January 1, 1924, to November 9, 1924, inclusive, should be computed as of the end of such period, and the decedent's share of such profits, whether distributed or not, should be included in computing his net income in the return which was required to be rendered in his behalf for the calendar year 1924. The partnership apparently kept its books on a receipts and disbursements basis—at least its calendar year reports of income for the years prior to 1924 had been rendered on the receipts and disbursements basis, and the report which was filed by the surviving member of the partnership on account of the partnership for 1924 was filed on the same basis. This last report was for the entire calendar year 1924 and covered receipts and disbursements by the partnership from January 1 to November 9, 1924, inclusive, as well as receipts and disbursements from November 10, 1924, to December 31, 1924, inclusive, of the surviving partner, who carried on the business after the dissolution of the partnership. In making such report, the surviving partner allocated a part of the profits, which he determined for the entire year, to the period January 1 to November 9, 1924, and the remainder to the period November 10 to December 31, 1924. No evidence was furnished as to the manner in which this allocation between periods was accomplished. The respondent likewise followed the receipts and disbursements method, but instead of first determining the profits for the entire year 1924 and then allocating such profits to the two periods, he determined the profits of each period on the basis of receipts and disbursements for such periods. The petitioners admit that if there is to be a determination of income of the partnership for the period January 1 to November 9, 1924, inclusive, on the basis of cash received and disbursed in this period, the result reached by the respondent is mathematically correct, but objection is made thereto on the ground that in determining the profits for the period ended November 9, 1924, there was left out of account obligations then outstanding

which were properly chargeable against the profits for the period January 1 to November 9, 1924. While no evidence was furnished as to the existence of these obligations or their character, we fail to see wherein such obligations, if they existed, should be taken into consideration. The partnership is on a receipts and disbursements basis. On such basis similar objection could be made in most cases wherein income is being determined in this manner, since it would be most unusual to find a period in the existence of any business enterprise where there were not accrued items of income or expense which had not been received or paid. Then, too, if the obligations referred to are to be considered, the same argument would apply to any income due, but not yet received and, likewise, if we are to make these adjustments at the end of this partnership period, would it not be necessary to make similar adjustments at January 1, 1924?

While the foregoing discussion illustrates objections which may be made to the use of the receipts and disbursements basis, we fail to see wherein there is warrant in the statute for accepting a method proposed by the petitioners which would be part accrual and part receipts and disbursements. When a taxpayer elects to report on a receipts and disbursements basis, he must take such method with the advantages and disadvantages appertaining thereto. When Abe Levy died, the partnership was dissolved, and we must determine the profits of the partnership without regard to what happens in the liquidation of the partnership. What we are seeking to determine is profits of operation—not gain or loss which may result through liquidation of the partnership. Whatever income had been earned up to this time which had not been collected and which properly belonged to the decedent would represent an asset which would become a part of the corpus of the decedent's estate, and any part of the liabilities for which the decedent was responsible would become liabilities of the estate. The fact that their collection and payment at face value would not constitute income and expense to the estate (*Nichols* v. *United States, supra,* and *Walter R. McCarthy, Executor, supra*) would not alter the fact that in determining the profits of the partnership (a separate taxable entity) on the receipts and disbursements basis, such profits must be computed on the basis of income received and expenses disbursed. In the *Nichols* case, the decedent was, at his death, the member of a partnership which had performed some services for which the partnership had not been paid at decedent's death. The amount was paid between the date of death and the end of the calendar year in which the decedent died. Both the decedent and the decedent's executors kept their books of account on the cash receipts and disbursements basis. The Commissioner sought to tax the share of these profits which was received by the

estate as income of the estate.   The Court of Claims, in denying the contentions of the Commissioner, said:

It thus appears that the one item has been treated as part of the value of the gross estate for estate-tax purposes, and as part of the gross income of the estate for income-tax purposes and the question for decision is whether it can be made to serve in both these capacities.   We think the answer must be in the negative.   For taxation purposes the individual's income during his lifetime and the income of his estate after his death are distinct things, the individual and his estate being separate entities.   *   *   *   When, therefore, an item is properly determined to constitute a part of the gross estate of a decedent for estate-tax purposes it can not by any sort of reasoning be made to constitute a part of the income of the same estate.   It is a part of the corpus.   The income of an estate which the statute taxes, is, generally speaking, the income which accrues after the estate begins, and it begins with the decedent's death.   *   *   *   In the instant case the decedent did not receive the amount in question.   He did not keep his books on an accrual basis.   According to the facts his books of account, as also the books of plaintiff, as executors, "were kept on a cash receipts and disbursements basis."   In these circumstances the right to receive from the partnership the distributive share to which the decedent was entitled passed at the time of his death to the executors as an asset of the estate, and when the amount was ascertained and paid it became part of the estate, not as income, but as corpus.

That there may be a hiatus as between the income taxable to the decedent and that taxable to the decedent's estate is explained by the fact that we are dealing with entirely separate taxable entities, and that specific statutory provision is made for the starting point in dealing with an estate which may or may not coincide with the extent to which accretions in income have been taxed to the decedent.   (Section 204 (a) (5), Revenue Act of 1924.)   In the case at bar, any liabilities of the decedent which existed at his death would become liabilities of his estate and their satisfaction would not constitute a deduction from any income which the estate may have realized during the period of its administration, even though they may have been deductible to the partnership in determining its income on the basis on which its books were kept and reports of income rendered.

In view of the foregoing, the Board is of the opinion that the profits of the partnership for the period January 1 to November 9, 1924, inclusive, must be determined upon the basis of accounting employed by the partnership and that since the basis so employed was the receipts and disbursements basis, income accrued at the decedent's death or expenses then due, but unpaid, can not be taken into consideration.   In the brief filed after the hearing the Commissioner makes the following statement:

The respondent concedes that the correct tax liability of the decedent can not be determined as of the date of his death without taking into consideration the aggregate net income of the partnership for the year 1924, the books of the petitioner not having been closed, to determine the profit as of the date of death.

In other words, the decedent's income is limited to what he would have been entitled to receive upon the dissolution of the partnership, November 10, 1924, and a winding up of its affairs. It is the position of the respondent that the decedent's distributive share of the aggregate net income of the partnership of which he was a member for the year 1924 should be allocated to him in the proportion that the number of days he lived during the year 1924 has to the entire year. The decedent having died November 10, 1924, his income would be 314/365ths of his distributive share of the aggregate net income of the partnership for the year 1924.

The Board is of the opinion that the foregoing statement proceeds upon the false premise that profits of the partnership for the period when it was in existence will be changed by what happens in the liquidation of the partnership. It is not understood as a confession of error on the part of the respondent with respect to his determination of the profits of the partnership on a receipts and disbursements basis on account of its operations from January 1 to November 9, 1924, inclusive, when this period is considered without regard to events which happened subsequent to November 9, 1924. The decedent's share of the profits of the partnership from January 1 to November 9, 1924, inclusive, as determined by the respondent on the receipts and disbursements basis, was $68,486.74. Since the Board is of the opinion that no valid objection had been made to the respondent's computation, its *prima facie* correctness will be sustained.

The foregoing views are not in conflict with the decision in *Bankers Trust Co.* v. *Bowers* (C. C. A.), 295 Fed. 89. The facts in that case were that one Glackner, who had made his income-tax returns on the calendar year basis, died on April 4, 1921. His executors filed two income-tax returns—one return reported the net income received by Glackner during the taxable year 1921, and the other the net income received by them as executors during the same taxable year, and paid the taxes shown due by the two returns. Respondent applied section 226 of the Revenue Act of 1921, and increased the tax on both returns. The court held that section 226 had no application and that the executors' method of returning income of their decedent and his estate was proper. In that case the question arose as to what was the taxable year of both decedent and his estate, and in passing on this issue, the court said:

* * * The fundamental scheme of title 2 of the Revenue Act is for a tax upon the net income of the taxpayer during an accounting period of 12 successive months. This general accounting period seems to be a predetermined measure to be applied to a taxpayer as income, and is not affected by his death or change of status within the period. The tax is imposed upon the entire net income for such period, and the return of such income constitutes his return for the period of 12 full months, *even though he may have lived only a portion thereof.* (Italics supplied.)

Again, the court said:

The plaintiffs allege their accounts as executors were kept on the calendar year basis, and upon this basis they are taxable pursuant to Section 219. We find nothing in the act making returns filed for decedents or estates exceptions to the general rule. The plaintiffs, in their returns for the decedent and his estate, did not elect to change the accounting period, nor is there any attempt to defeat the collection of the tax, which might invoke either of the sections above referred to. Therefore, not falling within either of the exceptions above, they would be improperly considered, if returned for less than a year. *The time of receipt of income or the ability to receive income has no bearing upon the accounting period.* A taxpayer may receive his income for the year on the first day of the year. He may become a nonresident alien during the year, without property in or income from any source in the United States. As an alien, he may have come to this country during the first taxable year, and he may have attained his majority or become incompetent during the year. When during the year his status changes, and he becomes a taxpayer, or ceases to be one, is immaterial. *If he received taxable income during any part of that year, and kept his books on a calendar year basis, a return is required of all such income derived from or received within the 12 months of such calendar year, and the return is for a period of 12 months.* Here the plaintiffs reported all the taxable income received by the decedent during the calendar year of 1921; and in their return, they reported all the taxable income received by the estate of the decedent during the same calendar year 1921. *The estate and deceased were separate entities, each having a separate accounting.* Because their books were kept for the calendar year 1921, it required them to return for that year. It was possible for the estate to have kept its books on a fiscal year basis. A different period might then have been called for. The return filed for the decedent was one of the returns required to be filed by the fiduciaries and for "an individual" having a net income for the taxable year of "$1,000 or over" under section 225, and the estate return was required for "every estate or trust the net income of which for the taxable year is $1,000 or over" under the same section. The decedent and his estate have long been regarded as separate taxable entities. In *Mandell* v. *Pierce* (16 Fed. Cas. 576, Case No. 9,008), arising under the Act of June 30, 1864 (13 Stat. c. 173), an executor sought to recover a tax collected on the income received by the decedent from January 1, 1865, to July 2, 1865, the date of his death. The plaintiff argued that the income tax was imposed on an annual income, and the act required no return to be filed by an executor, where the deceased died before the time appointed for the filing of the return. In sustaining the tax, the court said it was imposed upon the income received within the income year, and that the income received by the decedent within the income year constituted "annual gains, profits, and income" within the meaning of the act, holding that:

"Gains, profits, and income received within the income year are annual gains, profits, and income within the meaning of those laws, although the whole amount of the same in a given case may be received within the first month or the last month of the year."

And further:

"When ascertained as required by law, the intention of Congress was, that gains, profits, and income received within the income year, from the sources therein defined, should be subject to the prescribed taxation, whether such

gains, profits, or income were derived from any kind of property, rents, interest, dividends, salaries; or from any trade, profession, employment, vocation, owned, collected, pursued, or followed for the whole or any part of the income year."

Subdivision (f) of section 216 (Comp. St. Ann. Supp. 1923, § 6336–1/8h) provides:

"The credits allowed by subdivisions (c) (d) and (e) of this section shall be determined by the status of the taxpayer on the last day of the period for which the return of income is made; but in the case of an individual who dies during the taxable year, such credits shall be determined by his status at the time of his death, and in such case full credits shall be allowed to the surviving spouse, if any, according to his or her status, at the close of the period for which such survivor makes return of income."

This section indicates it was not the intention of Congress that the date of death be the last day of the period for which the decedent's return is filed. * * * (Italics supplied.)

The decision of the Board in the *Appeal of R. W. Archbald, Jr., et al., Executors, supra,* on which reliance is placed by the petitioners, involved certain facts which are not present in the case at bar. In that case, a partner, who had regularly made his income-tax return on a calendar year basis, was a member of a partnership which had kept its accounts on the basis of fiscal years ending January 31 of each year. The partner died on August 15, 1920. The question presented was whether the executors of a deceased partner should return for the year 1920 not only the share of decedent in the partnership income for the fiscal year ending January 31, 1920, but also the share of the profits of the partnership from February 1, 1920, to August 15, 1920, the date of decedent's death, and the consequent dissolution of the partnership. The Board held that the only income from the partnership to be included in the return for the decedent for the calendar year 1920 was the distributive share of the partnership to which he was entitled for the fiscal year ended January 31, 1920. There is not involved in the case at bar any conflict on account of the partnership being on a fiscal year basis and the partner on a calendar year basis; here the accounting periods coincide. Nor is there involved the question of a partner being required to report more than 12 months' income on account of the operations of a partnership. To the extent, however, that the views expressed in the *Archbald* case are in conflict with the views herein expressed, the *Archbald* case is overruled.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

Trussell and Green dissent.

Phillips concurs in the result.

---

Murdock, concurring: Although the partnership was terminated by the decedent's death, its taxable period was not affected thereby.

*Bankers' Trust Co.* v. *Bowers*, 295 Fed. 89, and as a part of the decedent's income for the year 1924, there should be reported his distributive share of the net income of the partnership for the full 12-month period, including therein any income received for and on account of the partnership during any part of the full 12-month period, including that received during the period after the decedent's death for and on account of the partnership which previously existed, and allowing the deduction of all proper disbursements of the partnership for the full 12-month period, including those made during the period after the decedent's death for and on account of the partnership which previously existed. In this way only can the decedent's share of the distributive net income of the partnership be determined. I do not propose to take into account anything done by way of liquidation of the partnership, but only to take into account those things which affect the determination of the net income of the partnership for the full 12-month period. In the present case the Commissioner's determination should probably be approved, for the reason that the petitioners have failed to show what events took place after November 9, 1924, which would affect the distributive net income of the partnership.

MILLIKEN, dissenting: I concur in the solution set forth in the concurring opinion as to the manner in which the income of the decedent from the partnership is to be determined for the period January 1, 1924, to date of death. I dissent however from the action of the majority in affirming the determination of the respondent.

While we know the exact amount of the partnership income for the calendar year 1924 which was paid to or for the benefit of decedent during his lifetime, we do not know the net income of the partnership for the period January 1, 1924, to November 10, 1924, the date of death of the decedent. Both respondent and petitioner have proceeded upon the theory that the partnership did not terminate with the death of the decedent and computed the income of the partnership for the whole calendar year. In this computation they differ as to the amount of such income. Respondent determined one amount and then admitted that petitioner reported a larger amount. Petitioner allocates only so much of the annual income to the decedent as was either paid to him in his lifetime or during such period was paid for or on his account. This is not in accord with section 218. On the other hand, respondent has erroneously refused to consider charges against the partnership which existed but were unpaid at decedent's death. Both computations are in error and we have not been supplied with sufficient data whereby we might correct them. The respondent admits in brief filed in this cause that his method of computation was erroneous and requests us to

apportion the annual income between the decedent and his estate on the basis of time. In other words, he has requested us to indulge in speculation pure and simple. For all we know losses may have been sustained after the decedent's death which would have wiped out almost entirely the income attributable to the period January 1, 1924, to date of decedent's death.

It is also pertinent to point out that the prevailing opinion overrules *R. W. Archbald, Jr., et al.*, 4 B. T. A. 483. The petitioner tried this case at a time when he had the right to consider that the *Archbald* case, *supra*, represented the settled views of the Board. By the overruling of the *Archbald* case the petitioner is placed in a dilemma that he would not have found himself in had the *Archbald* case been followed.

Rule 50 of our rules of practice specifically provides that the burden of proof shall be upon the petitioner, and the cases are legion where we have found it necessary to affirm the determination of the respondent due to the failure of the petitioner to prove the errors averred. However, to affirm the determination of the respondent in the case at bar, when it clearly appears that his determination was in error and is so admitted by him in the brief filed, would result in the application of our rule to a state of case not intended and work a manifest injustice. We should not give sanction to that which on its face shows error. In my opinion this proceeding should be restored to the general calendar for hearing in due course and both parties given the opportunity to try the case in conformity with the rule laid down in the prevailing opinion.

VAN FOSSAN concurs in this dissent.