CENTRAL NATIONAL BANK, PETITIONER, *v,* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CENTRAL TRUST & SAVINGS BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 42587, 42588.   Promulgated December 14, 1933.

*O. D. Brundidge, Esq.*, and *J. R. Nelson, C.P.A.*, for the petitioners.
*J. M. Leinenkugel, Esq.*, for the respondent.

## OPINION.

MURDOCK: The Central National Bank is the petitioner at Docket No. 42587. The Commissioner determined a deficiency of $6,217.83 in its income tax for the period March 6 to December 31, 1925. The Central Trust & Savings Bank is the petitioner at Docket No. 42588. The Commissioner determined deficiencies of $2,403.67 and $4,062.90 in its income tax for the period March 6 to December 31, 1925, and for the calendar year 1926, respectively.

The Central National Bank in its petition assigns eight errors relating to the calendar year 1926. Since the Commissioner determined no deficiency in this taxpayer's tax for that year, the Board has no jurisdiction as to its tax liability for that year. In the same petition nine errors are assigned which relate to the deficiency determined for the period March 6 to December 31, 1925. Four of these relate to depreciation deductions and have been settled by agreement between the parties. Another is not urged. The other assignments of error may be summarized as follows:

(a) The Commissioner erred in refusing to allow a deduction of $12,541.83 representing a loss of interest in the state depositors'

guaranty fund sustained during the period March 6 to December 31, 1925.

(b) The Commissioner erred in refusing to allow the Central State Bank, the Central National Bank, and the Central Trust & Savings Bank to file a consolidated return for the full calendar year 1925 in which the income of the two petitioners for the period March 6 to December 31, 1925, was more than offset by the loss of the Central State Bank for the period January 1 to March 6, 1925, leaving a net loss for the group for the year 1925.

The Central Trust & Savings Bank assigns seven errors in its petition. Three of these have been disposed of by agreement and one is no longer urged, having no facts to support it. Two other assignments may be summarized as in (b) above. The remaining assignment is:

(c) The Commissioner erred in refusing to allow the affiliated banks to bring forward the net loss of all three banks in 1925 as a deduction in 1926.

A stipulation of facts was filed at the hearing and at that time the Commissioner made claim against the Central Trust & Savings Bank for an increased deficiency for the year 1926, based upon the facts as stipulated. He claims that he has erroneously failed to include in the consolidated income of the two affiliated companies for 1926, $37,625.60 received by the Central National Bank from the depositors' guaranty fund, representing a return of advances made by the Central State Bank to the fund and for which the Central State Bank had taken deductions from its income.

The Central State Bank was incorporated under the laws of Texas a number of years prior to 1925. It conducted a banking business at Dallas, Texas, until March 7, 1925. In 1925 its directors were concerned about its condition. It had charged off a large amount of bad loans and had made substantial contributions to the state depositors' guaranty fund. They believed that an assessment of stockholders would be an unwise move. In accordance with a plan suggested by a committee which the directors had appointed, two new banks were organized on or about March 6, 1925. One is the Central National Bank, organized under Federal laws with capital of $500,000. The other is the Central Trust & Savings Bank, organized under the laws of Texas with capital of $200,000. Some of the assets of the Central State Bank were acquired by these two new banks, as will hereafter more fully appear. The two new banks were housed in the same banking rooms which the Central State Bank had occupied. They were operated as separate institutions. During some part of 1925 and 1926 B. F. Joyner was cashier of the Central National Bank and assistant vice president of the Central Trust & Savings Bank.

In the written stipulation the parties agreed that the proceedings might be submitted upon the facts therein agreed upon, together with such other evidence as might be submitted at the hearing. The parts of the stipulation relating to the questions before us for decision are as follows:

1. The Central National Bank and the Central Trust & Savings Bank were affiliated corporations under the Revenue Act of 1924 from and after March 6th, 1925, and during the year 1926.

2. Consolidated returns for the Central State Bank, Central National Bank and the Central Trust & Savings Bank were filed for the year 1925. Consolidated returns were filed by the Central National Bank and Central Trust & Savings Bank for the year 1926. The consolidated return for 1925 included the entire income and all deductions of the Central State Bank for that period, and the net loss thus created was carried forward and shown in the consolidated return for 1926.

3. The Central State Bank was a state bank, incorporated under the laws of the State of Texas and was a member of the Depositors Guaranty Fund of the State of Texas.

4. The stockholders and directors of the Central State Bank, during the early part of 1925, decided to and did incorporate and organize the Central National Bank and the Central Trust & Savings Bank for the purpose of taking over the assets and continuing the business theretofore conducted by the Central State Bank, as shown by Exhibits "A" and " B ".

5. The stockholders of the Central State Bank did, on March 6th, 1925, organize the Central National Bank and the Central Trust & Savings Bank for the purpose of taking over and continuing the business theretofore conducted by the Central State Bank, as shown by Exhibit " E " [sic], and the Central State Bank was then dissolved, as shown by Exhibits " C " and " D ".

6. The stockholders of the Central State Bank received in lieu of their stock in said bank and for every ten shares of their stock in that bank, five shares of stock in the new Central National Bank and two shares of stock in the new Central Trust & Savings Bank.

7. The capital stock of the Central State Bank was $1,000,000.00, but its assets were appraised for the purpose of the conversion at the sum of $700,000.00.

8. From and after the date of their incorporation, to-wit, March 6th, 1925, the Central Trust & Savings Bank and the Central National Bank were two branches of the same business, owned by the same stockholders, managed by practically the same Board of Directors, and the same officers, the Central Trust & Savings Bank conducting the savings and trust department of the Central National Bank.

9. On March 6th, 1925, the Central National Bank and the Central Trust & Savings Bank were owned by the same stockholders and in exactly the same proportion as they had theretofore held stock in the Central State Bank.

10. During the period from March 6th, 1925, to December 31st, 1925, the Central National Bank and the Central Trust & Savings Bank conducted an affiliated business with approximately the same assets owned by the Central State Bank during the period from January 1st, 1925, to March 6th, 1925.

11. During the period from March 6th, 1925, to December 31st, 1925, and during the year 1926, affiliated corporations, Central National Bank and Central Trust & Savings Bank, conducted their business at 1602 Main St., Dallas, Texas,

owning the same banking house, office building and banking fixtures owned and used by the Central State Bank prior to that time.

Exhibit A is a copy of minutes of a meeting of the stockholders of the Central State Bank held on March 5, 1925. At that meeting the stockholders of the Central State Bank authorized the officers and directors of that corporation to sell to the Central National Bank "for the consideration of Five Hundred Thousand Dollars and the assumption of individual deposits, bank deposits, certificates of deposit, cashier's checks, certified checks, and customers' bonds deposited, aggregating $3,587,685.83; all that portion and part of the assets of said Central State Bank representing loans and discounts, bonds, money, deposits, real estate, and assets, as follows:

| | |
|---|---|
| Loans & Discounts, | |
| Commercial | $2,099,647.23 |
| Call Loans, New York City | 300,000.00 |
| Acceptances | 22,220.00 |
| Bonds, Securities, | |
| Stock in Federal Res. Bank | 19,500.00 |
| Customers Bonds Deposited | 125,550.00 |
| Other Stocks, Bonds & Sec. | 136,322.11 |
| Furniture & Fixtures | 71,146.67 |
| Banking House | 425,000.00 |
| Interest in Dep. Gty. Fund | 50,167.43 |
| Cash, | |
| Due from Banks | 755,872.78 |
| Cash in Vault & Exch. | 200,975.09 |
| Cash collections outstanding | 83,115.93 |
| TOTAL | $4,289,517.24 |
| Capital Stock | $500,000.00 |
| Surplus | 130,000.00 |
| Undivided Profits | 40,230.16 |
| Reserved for Taxes | 3,650.00 |
| " " Int. Cert. Dep. | 2,469.57 |
| " " Int. on Bank Bldg. | 2,291.68 |
| " " Blanket Bond | 3,190.00 |
| DEPOSITS | |
| Individual | 2,361,577.27 |
| Bank | 934,606.09 |
| Certificate of Deposits | 113,850.17 |
| Cashiers Checks | 49,534.21 |
| Certified Checks | 2,568.09 |
| Customers Bonds Deposited | 125,550.00 |
| TOTAL | $4,289,517.24 " |

At the same meeting the stockholders of the Central State Bank also authorized the officers and directors of that corporation to sell to

the Central Trust & Savings Bank "for the consideration of Two Hundred Thousand ($200,000) Dollars, and the assumption of the savings deposits aggregating $1,059,391.58; all that portion and part of the assets of the Central State Bank representing loans and discounts, bonds, money, deposits, real estate, and assets as follows:

| | |
|---|---:|
| Loans & Discounts, | |
| Commercial | $129,625.44 |
| Savings | 677,052.39 |
| Other Stocks Bonds & Sec | 83,374.82 |
| Furniture & Fixtures | 6,801.90 |
| Other real estate | 17,247.48 |
| Assessment Dept. Gty. Fund | 28,058.73 |
| Cash, | |
| Due from Banks | 1,741.81 |
| "      "      " | 181,283.46 |
| Cash in Vault | 7,581.73 |
| TOTAL | $1,332,767.76 |
| Capital Stock | $200,000.00 |
| Surplus | 50,000.00 |
| Undivided Profits | 10,230.17 |
| Reserved for Sav. Int | 6,326.00 |
| "      " Cal. Banks | 1,620.01 |
| Bills Payable | 5,000.00 |
| Deposits, | |
| Savings | 1,037,976.66 |
| Xmas Sav | 20,131.50 |
| 1924 Xmas Sav. Dep | 72.50 |
| Ford Sav. Dep | 1,210.92 |
| TOTAL | $1,332,767.76 " |

The minutes next show the adoption of a resolution as follows:

BE IT FURTHER RESOLVED by said stockholders that, on completion of the sale as aforesaid, the stock held by each respective stockholder in the Central State Bank shall be exchanged for stock in the Central National Bank in Dallas and in the Central Trust & Savings Bank of Dallas, in the following manner, to-wit: For each share of stock in the Central State Bank, the owner thereof shall be entitled to stock in the respective institution so purchasing the assets of the Central State Bank, on the respective bases of 3/7 in the National bank and 2/7 in the Trust & Savings Bank, on a valuation of the Central State Bank stock of Seventy Dollars per share.

In these same minutes the stockholders authorized and directed the officers and directors of the Central State Bank to proceed to dissolve their corporation and dispose of its remaining assets, and to cease doing business as a state bank at the close of business on March 6, 1925, and transfer the assets above mentioned to the Central National Bank and Central Trust & Savings Bank on or before nine o'clock March 7, 1925.

Exhibit B is a copy of minutes of a meeting of stockholders of the Central State Bank held on March 6, 1925. These minutes show the adoption of a resolution in part as follows:

WHEREAS there remains in the hands of the Central State Bank certain assets which were not passed to either of said institutions, to-wit:

| | |
|---|---:|
| Loans & Discounts | $133,866.10 |
| Charge offs | 463,171.60 |
| | $597,037.70 |

as shown in detail by Exhibit " C " in blotter No. 1 at page —, et seq., and here referred to; and

WHEREAS it is the purpose of the Central State Bank to dissolve its corporation and cease business, and it is advisable, therefore, that said remaining assets be placed in the hands of a trustee, to be collected and distributed among the stockholders in said Central State Bank, or to have said assets sold and the proceeds so distributed; and

WHEREAS the stockholders in the Central State Bank are exchanging their stock respectively for stock in the National Bank and in the Central Trust & Savings Bank.

THEREFORE, BE IT RESOLVED by the stockholders of the Central State Bank that the directors be and they are authorized to either place the remaining assets of the Central State Bank in the hands of a trustee for sale and distribution to the stockholders of said bank, or sell the same for the best price obtainable for the benefit of the stockholders of the Central State Bank.

BE IT FURTHER RESOLVED that the proceeds of said assets be distributed to the stockholders of the Central State Bank by paying over the proceeds of said assets so here ordered to be sold or placed in trust, to the Central National Bank in Dallas, and to the Central Trust & Savings Bank of Dallas, in the proportion in which the stockholders of the Central State Bank have exchanged their stock for stock in the two institutions above; and

BE IT FURTHER RESOLVED that the directors aforesaid be authorized to do any and all other acts necessary to a disposition of the assets of said Central State Bank still remaining in their hands at this date, and to a dissolution of said corporation.

Exhibit C is a copy of minutes of a meeting of the board of directors of the Central State Bank held on May 22, 1925. These minutes show that a stockholders' meeting authorizing dissolution had been held that same day and a certified copy of those minutes was directed to be filed with the secretary of state, the charter surrendered, and the corporation dissolved.

Exhibit D is a copy of the certificate of dissolution of the Central State Bank, which certificate was issued from the office of the Secretary of State of the State of Texas on June 23, 1925.

Exhibit E is a copy of minutes of the first stockholders' meeting of the Central National Bank held on March 5, 1925, at which the officers and directors were authorized and directed to purchase from the Central State Bank " for the consideration of Five Hundred Thousand ($500,000.00) Dollars cash, to be paid by the said National

Bank to the said State Bank, all that portion of the assets of the said Central State Bank aforesaid, set forth and shown in Exhibit A, made a part of the minutes of the stockholders' meeting, and to do and perform any, all and every act and things necessary to the completion of said purchase; and the said National Bank, in taking over the deposits of the Central State Bank, assumes the obligations of the Central State Bank to each depositor for the amount of his deposit so taken over at the close of business of the Central State Bank on the 6th day of March, A.D. 1925." At the same meeting the stockholders ordered the bank to open for business on the morning of March 7, 1925.

Exhibit F is attached to the stipulation, but is not mentioned in the body of the stipulation. It is as follows:

GUARANTY FUND ASSESSMENTS

CENTRAL NATIONAL BANK:

| | | |
|---|---:|---:|
| Balance, March 6, 1925 | | $50,167.43 |
| Charge off, 1925 | $5,000.00 | |
| Charge off, 1926 | 2,500.00 | |
| Recovered, 1926 | 37,625.60 | |
| | | 45,125.00 |
| Balance | | $5,041.83 |

CENTRAL TRUST & SAVINGS BANK:

| | | |
|---|---:|---:|
| Balance, March 6, 1925 | | 28,058.73 |
| Additional Remittance, 1925 | | 23,839.43 |
| | | $51,898.16 |
| Recovered, 1925 | $8,320.18 | |
| Profit & Loss | 10,000.00 | |
| | | 18,320.18 |
| Balance, December 31, 1925 | | $33,577.98 |
| Assessment, 1926 | | 3,121.26 |
| | | $36,699.24 |
| Recovered, 1926 | | 11,064.27 |
| Profit & Loss, 1926 | | $25,634.97 |

The Comptroller of the Currency requested the Central National Bank to charge off $2,500, being the item shown on Exhibit F as "charge off, 1926, $2,500." There was at that time $2,500 in the account which had never been charged off previously. The item "Balance, March 6, 1925, $50,167.43" on Exhibit F represents money in the hands of the state and money on deposit in the Central National Bank to the account of a state agency, which had been paid over a period of years by the Central State Bank into the state depositors' guaranty fund. The payments made to this fund had not been deducted by the Central State Bank as ordinary and nec-

essary expenses for the years in which made, but had been set up in a special asset account as its interest in the depositors' guaranty fund.

The Central State Bank, the Central National Bank, and the Central Trust & Savings Bank each kept its accounts on the basis of actual cash receipts and disbursements.

The respondent, in making claim at the hearing for an increased deficiency against the Central Trust & Savings Bank, filed an amended answer in which he set forth his contention and the facts to support it. He stated that he relied entirely upon facts already stipulated. The Central Trust & Savings Bank, after the hearing, prepared and filed a so-called reply to the amended answer. The last two paragraphs of this so-called reply seem to have been intended as assignments of error. A reply, under the Board's rules of practice, is solely for the purpose of admitting or denying facts and for setting forth facts upon which the petitioner relies as a defense against the affirmative contentions made by the respondent. Rule 15. It can not be used to raise new issues in which the petitioner seeks affirmative relief. Neither petitioner has ever made any request to amend its petition to raise any new issues. Consequently we will consider only the issues raised by the petitions and the answer above referred to. Cf. *North American Coal Corp.*, 28 B.T.A. 807.

There is no question before us of the right of the Central National Bank to take a deduction in connection with its interest in the depositors' guaranty fund for the year 1926. Such a question can not arise here in connection with its own tax liability for 1926, for as to that we have no jurisdiction. Furthermore, although we have jurisdiction as to the tax liability of its affiliate, the Central Trust & Savings Bank, for 1926, that petitioner has not assigned any such error. Petitioner Central National Bank has properly raised a question of its right to a deduction in this connection for the period March 6 to December 31, 1925. See "(a)" above. It no longer claims the entire amount mentioned in that assignment as a deduction for that period, but limits its claim to a deduction of $5,000, the amount charged off in that period. The Commissioner claims an increased deficiency from the Central Trust & Savings Bank for 1926 on the theory that the consolidated income of the two corporations for 1926 should be increased by $37,625.60, the amount which the Central National Bank received in 1926 from the depositors' guaranty fund. Thus, the two questions before us in connection with the depositors' guaranty fund are (1) whether petitioner Central National Bank is entitled to a deduction of $5,000 for the period March 6 to December 31, 1925, and (2) whether the deficiency of the Central Trust & Savings Bank determined for 1926 should be increased

through the increase of consolidated income of the two corporations for 1926 which would result from adding $37,625.60 to the income of the Central National Bank for 1926.

The respondent, relying upon *First State Bank of Brackettville*, 9 B.T.A. 975, and *First State Bank of Weimer*, 10 B.T.A. 396, contends that assessments for or contributions to such a fund are deductible when made, and recoveries from the fund are income when received. He would thus win his point that the $37,625.60 was income in 1926 and defeat the Central National Bank on its point that the $5,000 was a proper deduction for the short period in 1925, for the latter never contributed to the fund. Unless the Central National Bank stands in a position different from that of the Central State Bank, the case is governed by the two cases relied upon by the respondent. Those cases dealt with payments to the fund and recoveries from the fund made by a member bank. However, the Central National Bank, the petitioner here, was not a member bank, did not contribute to the fund, and was not eligible, since it was a national bank, to join and have its deposits guaranteed by the fund. We think the Commissioner's reliance on the Board cases is misplaced.

The Central State Bank had certain rights to refunds from the fund based upon its contributions. One event which entitled it to a refund was its withdrawal from the fund. It transferred a portion of these rights to the Central National Bank on March 6, 1925, and withdrew from the fund. These rights were assets in the hands of the Central National Bank if they had any value and normally would have a new basis for gain or loss in the new hands. This basis would be their cost to the Central National Bank. Sec. 204 (a), Revenue Act of 1926. (The cost might be measured by their fair market value at the date of acquisition if they were acquired through an exchange.) If the assets took a new basis, the Board cases above referred to would be inapplicable and we would have to leave the parties as we found them, because we do not know either the cost of these assets to the Central National Bank or their value at the time of acquisition. The $50,167.43 is a mere book entry and does not show cost or value. Neither a charge-off nor a conversion of the assets into cash could be translated into gain or loss without knowledge of the basis. Each party would thus fail in its affirmative contention for failure to prove the proper basis for gain or loss. There are other reasons why the alleged loss would have to be denied on this theory of the case.

If this petitioner is not to have a new basis for gain or loss on the property, but instead is to stand in the shoes of the Central

State Bank, it must be because of the provisions of section 204 (a) (6) or (7) of the Revenue Act of 1926.[1] These and the other provisions upon which they depend create exceptions to a general rule and should not be extended by implication or otherwise to situations not expressly provided for. Neither of these provisions applies unless the Central National Bank acquired the property (these rights) in connection with a reorganization as defined in section 203 (h) (1). Even if there was a reorganization, section 204 (a) (6) would not apply unless the property were acquired in an exchange described in subdivision (b), (d), (e), or (f) of section 203, or unless the property consisted in part of the type of property permitted by paragraph (1), (2), (3), or (4) of subdivision (b) of section 203 to be received without the recognition of gain or loss. Section 204 (a) (6) is expressly inapplicable to property acquired by a corporation by the issuance of its stock as whole or part consideration for the transfer of the property to it. It is apparent that none of the provisions of section 203 (b), (d), (e), or (f) fits the facts in this case. No provision of (b) is appropriate here, either directly, or in the alternative required for the application of (d), (e), or (f). Subdivision (b) (1), (4), and (5) require no discussion to show that they are inapplicable. Subdivision (b) (2) has to do only with gain or loss on stock or securities of a corporation and has nothing to do with the exchange of such property as the rights here involved. Nor does (b) (3) cover this property. It deals with a

[1] Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property ; except that—

*     *     *     *     *     *     *

(6) If the property was acquired upon an exchange described in subdivision (b), (d), (e), or (f) of section 203, the basis shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. If the property so acquired consisted in part of the type of property permitted by paragraph (1), (2), (3), or (4) of subdivision (b) of section 203 to be received without the recognition of gain or loss, and in part of other property, the basis provided in this paragraph shall be allocated between the properties (other than money) received, and for the purpose of the allocation there shall be assigned to such other property an amount equivalent to its fair market value at the date of the exchange. This paragraph shall not apply to property acquired by a corporation by the issuance of its stock or securities as the consideration in whole or in part for the transfer of the property to it ;

(7) If the property (other than stock or securities in a corporation a party to the reorganization) was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

corporation which exchanges property with another for stock or securities in one of the other corporations, a party to the reorganization. The Central State Bank received no stock or securities in either of the other banks. Thus section 204 (a) (6) does not apply in this case. The language of section 204 (a) (7) which we must consider is as follows:

If the property * * * was acquired * * * by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons * * *, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

There is no provision of the Revenue Act of 1926 which prevented the recognition of gain or loss to the Central State Bank, the transferor, upon the transfer of these assets in 1925. Yet we have not been shown what its gain or loss amounted to. Therefore, even if section 204 (a) (7) applied and if we knew the basis in the hands of the Central State Bank, still we could not compute the adjusted basis for gain or loss which this particular property would have in the hands of the Central National Bank. Consequently we would be just where we were before, i. e., we would be unable to give to either party the affirmative relief sought, and would have to leave the parties as we found them.

We have already pointed out that there would be no occasion for a consideration of section 204 (a) (6) or (7) if there was no reorganization. The minutes attached to the stipulation describe the transactions as sales for cash and the assumption of certain liabilities. Cf. *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; certiorari denied, 288 U.S. 599; *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U.S. 462; *Prairie Oil & Gas Co.* v. *Motter*, 1 Fed. Supp. 464; *Warner Co.*, 26 B.T.A. 1225. Details of how and when the petitioners obtained the cash and of how and when the stock was exchanged are not clearly shown. There was quite the reverse of a consolidation or merger. We have been referred to no case in point. However, as appears from our discussion above, we need not decide whether or not there was a reorganization.

The stipulation contains several misleading statements as to just how close these three banks were. See paragraphs 8 and 10. Since we think these statements are immaterial in the decision of the case, we do not discuss them in detail, but give our attention next to the petitioners' assignments of error relating to returns and losses.

The Commissioner agrees that the Central National Bank and Central Trust & Savings Bank were affiliated from the beginning of their existence throughout the remainder of 1925 and during all of the year 1926. He further agrees that they were entitled to file a consolidated return for the period March 6 to December 31, 1925, and another for the year 1926. But he has refused to compute the tax liability of these taxpayers on the basis of a consolidated return which includes and combines with the income and deductions of these two the income and deductions of the Central State Bank for all or a part of the period of its existence in 1925. The petitioners did not have to file any return for that period of the year 1925 prior to their incorporation. There was a short period in 1925, from March 6 to June 23, during which all three corporations were in existence and, apparently, were affiliated. The petitioners had three choices, to wit, separate returns, a consolidated return for the two, or a consolidated return for all three for the period from March 6 to June 23, 1925. The taxpayers did not choose to file a consolidated return for the latter period and no question arises based upon their rights to file such a return. The question is not in the case. We assume that the Central State Bank had been filing its returns on a calendar year basis. But it was dissolved on June 23, 1925, apparently was completely liquidated at that time, and had no further activities of any kind. It follows that the Central State Bank had, as its last taxable year or period, the period from January 1, 1925, to June 23, 1925. *Maurice L. Goldman et al., Executors*, 15 B.T.A. 1341. Its income or loss for the period should have been reported on a separate return. It certainly was not affiliated with either petitioner during the first part of 1925 or during the last part of 1925. There was here no consolidation, merger, or mere conversion of a state bank into a national bank. One was incorporated under Federal laws. The other two were incorporated under state laws. The three were separate corporations and separate taxpayers. Their taxable periods did not coincide. There is no statutory authority for combining the three for tax purposes as if there had been but one corporation or one affiliated group in existence during all of the year 1925. Cf. *Planter's Cotton Oil Co.* v. *Hopkins*, 286 U.S. 332. The three were not affiliated for the year and were not permitted to file one consolidated return for the entire year 1925. *Frelmort Realty Corp.*, 29 B.T.A. 181. The Commissioner did not err in computing the income of the petitioners for the period March 6 to December 31 without regard for any loss which the other separate taxpayer may have had prior to that period.

Nor do the net loss provisions aid either petitioner for 1925 or the Central Trust & Savings Bank for 1926. There is nothing in the statutes to authorize a net loss of one taxpayer for a period January 1 to June 23, 1925, to be applied against income of one or two other separate taxpayers for a period March 6 to December 31, 1925, or for the year 1926.. In the first place the " taxpayers " are different, (*New Colonial Ice Co.* v. *Commissioner*, 66 Fed. (2d) 480; affirming 24 B.T.A. 886), and in the second place there is no appropriate " succeeding taxable year."

The questions of returns for 1925 and of net losses for 1925 and 1926 are moot questions, so far as this case is concerned, unless the record contains sufficient proof of the alleged loss sustained by the Central State Bank. This should include proof that a loss was actually sustained, the amount of the loss, and, if the case depends upon carrying forward a net loss, the amount which may be carried forward as a net loss under section 206 (a). The Commissioner in his deficiency notices not only did not allow any loss, but he did not even mention any loss of the Central State Bank. He does not admit in his pleadings that there was any such loss. A taxpayer, in order to prove its case, must show that the Commissioner committed error and, in addition, must prove facts from which a correct determination of its tax liability may be made. *Botany Worsted Mills* v. *United States*, 278 U.S. 282. *F. G. Bishoff*, 6 B.T.A. 570; affd., 27 Fed. (2d) 91; *Murphy Oil Co.* v. *Burnet*, 55 Fed. (2d) 17; *Ramsay* v. *United States*, 55 Fed. (2d) 333; *Duffin* v. *Lucas*, 55 Fed. (2d) 786; *Union Co.* v. *United States*, 46 Fed. (2d) 717.

The evidence in this case contains but one reference to a net loss. It is in paragraph 2 of the stipulation. That paragraph informs us that the three banks filed a consolidated return for the calendar year 1925 which included the entire income and all deductions of the Central State Bank for that period. It then continues in the following words: " and the net loss thus created was carried forward and shown in the consolidated return for 1926." This statement, in our opinion, means no more than that the deductions shown on the consolidated return filed by these three banks for 1925 exceeded the income shown on that return. It is not a concession by the Commissioner that the income, deductions, and net loss thus created were properly or correctly shown on that return. But suppose we are wrong; still the return is not in evidence; there are no figures in evidence relating to the income or deductions of the Central State Bank for any period in 1925, nor are there any figures in evidence to indicate the statutory net loss of the Central State Bank computed under section 206 (a). The latter may be quite a different thing from the excess of deductions over income as shown on a return. Thus

the petitioners must fail on issues (b) and (c) even though their theory of consolidated returns and net losses were correct.

Reviewed by the Board.

> *An order will be entered dismissing the proceeding at Docket No. 42587 in so far as it relates to the year 1926, and decision will be entered under Rule 50 in respect to the periods for which the Commissioner determined deficiencies.*

LANSDON, dissenting in part: I am unable to agree with the majority report on the question of whether the banks involved were entitled to make a consolidated return for the year 1925. The record discloses that the old bank was merged into the two new banks on March 6, 1925, but that its corporate existence was continued for certain limited purposes until June 23 of that year. It is certain, therefore, that for at least a part of the year all three banks were affiliated, since the same stockholders owned all the stock of two of them in the same proportion and the two new banks owned all the stock of the old bank.

There was no period within the taxable year in which either of the new banks could be required to file a separate return. All three constituted for the year a single business owned by a single group of stockholders. The old bank was merged into the new organization and its business was continued unchanged even if under different names for the remainder of the year. In my opinion the inclusion of its income and deductions in a single consolidated return covering the entire year was not only lawful but necessary to prevent a violation of the principle that income is taxable on an annual basis. The old bank was on the calendar year basis and if it could be required to file separately, its return must be for the year and not for any fractional part thereof.

The effect of the respondent's ruling and of the majority report is to break down the taxable year of an economic unit into two taxable periods in circumstances that foreclose the deduction of losses sustained in the first from profits realized in the second, and results in a heavy tax in a year in which the business actuallly sustained a very considerable loss. Certainly Congress contemplated no such inequitable result from administrative interpretation of the provisions of section 240 of the Revenue Acts of 1924 and 1926. In *H. S. Crocker Co.*, 5 B.T.A. 537, in discussing a somewhat similar situation we said:

It is our conception of the law, that, for purposes of taxation, the affiliated group must be considered as a single economic unit. The requirement with respect to computing the taxes of an affiliated group on the basis of a con-

solidated return was first introduced into the law to prevent avoidance and resulting injustice, either to the Government or to the taxpayer, as the case might be, and not to create that situation. The normal treatment in the case of an affiliated group as a single economic unit, therefore, is to disregard the internal structure, to break down the separate legal existence of the constituent members, and to treat them in all respects, so far as taxation is concerned, as one.

In *Automatic Fire Alarm Co.*, 13 B.T.A. 1195, where an old corporation was in existence throughout the entire taxable year of 1920, and a holding company was incorporated during the year to take over the stock and securities of other companies held by the old company and also the stock of such company, we held that the income of the two companies should be computed on the basis of a consolidated return of their income for the full year. In *American Paper Exports* v. *Bowers*, 54 Fed. (2d) 508, the Circuit Court of Appeals for the Second Circuit held that where a parent corporation organized during the taxable year took over a subsidiary corporation, the latter was not required to file separate returns for the period preceding the taking over by the former. The facts in the cases cited above are so similar to the situation in the instant proceeding that I think the conclusion therein reached should control here. In my opinion the income of the single business conducted by the banks here involved should be reported in a consolidated return covering the entire year 1925. Cf. *Grand Rapids Nat. Bank*, 9 B.T.A. 1119; *Hutt Contracting Co.*, 17 B.T.A. 818; *Newblock Oil Co.*, 26 B.T.A. 696; *Bankers Trust Co.* v. *Bowers*, 295 Fed. 89; *Industrial Cotton Mills* v. *Commissioner*, 61 Fed. (2d) 291; *Western Maryland Ry. Co.* v. *Commissioner*, 33 Fed. (2d) 695.