WARNER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 53039, 53040, 59190. Promulgated October 19, 1932.

*William S. Hammers, Esq.*, for the petitioner.
*Harold D. Thomas, Esq.*, for the respondent.

OPINION.

ARUNDELL: These proceedings were consolidated for hearing and report and involve the redetermination of deficiencies of $2,789.30, $936.91 and $7,990.53 in income taxes of the Charles Warner Company for the respective years 1925, 1927 and 1928, which deficiencies have been asserted against petitioner as transferee of the assets of the Charles Warner Company.

The assets of the Charles Warner Company were transferred to petitioner in 1929 and petitioner concedes transferee liability, contesting only the amount. The single issue is the basis to be used for depreciation and depletion of assets acquired in 1924 by petitioner's transferor. The facts were stipulated and we adopt the stipulation as our findings of fact, setting forth here only those facts necessary to an understanding of the question presented.

In 1920 the Charles Warner Company, hereinafter called the taxpayer, acquired one-third of the stock of the Manor Sand and Gravel Company, at a cost of $24,243.71. The other two-thirds of the stock of said Manor Company was owned and controlled by the Penn Sand and Gravel Company and one J. A. Mundy.

The taxpayer was desirous of obtaining an adequate source of supply for its gravel and sand requirements, and with this object in view it entered into a contract dated March 29, 1924, with Mundy and with the holder of 73.27 per cent of the stock of the Penn Sand and Gravel Company, hereinafter called the Penn Company. Pursuant to this contract the taxpayer in July, 1924, purchased the 7,327 shares of Penn Company stock owned by the majority stockholder for $290,000 cash and $300,000 par value of the taxpayer's first preferred stock. It also purchased during the same month the balance of the Penn Company stock, 2,673 shares, from the minority holders, paying $49,500 cash therefor. The agreement with the majority

stockholder provided that the taxpayer would repurchase at par and for cash the $300,000 preferred stock issued as above set out at the rate of at least $50,000 per year, and it was further provided that the taxpayer might accelerate the repurchase of the stock at any time. As a matter of fact the taxpayer did repurchase all the preferred stock for cash at par during September, October and November, 1924.

On December 31, 1924, the taxpayer, as sole stockholder of the Manor and Penn Companies, caused the transfer to it of all the assets of those companies in complete liquidation of its stockholdings in the companies and on the same day both the Manor and Penn Companies were formally dissolved.

In computing depletion and depreciation on the properties acquired by the taxpayer in liquidation of its stock in the Manor and Penn Companies the respondent used as a basis the cost of the properties to the Manor and Penn Companies, on the theory that the liquidation effected a reorganization within the meaning of section 203 (h) (1) of the Revenue Act of 1926.

Under the Revenue Acts of 1926 and 1928 the basis for depletion and depreciation is the same as that for the computation of gain or loss, which, under section 204 (a) of the 1926 Act and section 113 (a) of the 1928 Act, is as follows:

The basis for determining gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—[and there are listed eleven exceptions under the 1926 Act and twelve under the 1928 Act].

The parties confine their discussion to the applicability of the provisions of the 1926 Act and we shall do likewise, inasmuch as the pertinent sections of the two acts are the same. The petitioner contends that none of the exceptions listed in the statute are applicable and that under the provision just quoted the basis in its hands is the cost of the stock to the taxpayer. We may say here that there is no issue as to the value of the assets received in liquidation being equal to the cost of the stock. The respondent's position is that the acquisition of the properties in liquidation brings the case under the exception in subsection (7) which, as far as material here, is as follows:

If the property (other than stock or securities in a corporation a party to the reorganization) was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor.

The part of the quoted subsection upon which the controversy here turns is the phrase "in connection with a reorganization." The

statutory definition of reorganization appears in section 203 (h) (1). and as far as it is material here, reads:

The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of * * * substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation, if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred.

The meaning of "reorganization" as used in the statute has been judicially declared in *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 57 Fed. (2d) 188, and *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937. In the *Pinellas* case it is said that a statutory reorganization occurs only where there is a "merger" or "consolidation" as those words are understood in law, and: "In either event, the resulting corporation acquires all the property, rights, and franchises of the dissolved corporations, *and their stockholders become its stockholders.*" (Italics supplied.)

In this case it can hardly be said that the stockholders of the dissolved Penn and Manor Companies became the stockholders of the taxpayer, as the taxpayer itself was the sole stockholder of those companies. The *Cortland Specialty Co.* case, *supra*, holds that, in order for a transaction to come within the intended meaning of "reorganization," "there must be some continuity of interest on the part of the transferor corporation or its stockholders." While it may be argued that there was a continuity of interest, inasmuch as the taxpayer owned all the stock of the two companies and after liquidation it owned all the assets, we think that the statute, as construed in the cited cases, was not intended to apply to cases of mere liquidation, but was meant rather to comprehend those situations where there is a merger or consolidation and the stockholders of the old corporation receive for their holdings a substantially similar interest in the new or merged corporation. In construing the sections of the statute applicable to reorganizations it must be remembered that the fundamental purpose of the statute with respect to recognition of gain or loss from sales and exchanges is expressed in section 203 (a) as follows: "Upon the sale or exchange of property the entire amount of gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section."

Under this provision of the statute it is necessary that the given transaction must come clearly within the exceptions set out in the statute if the gain realized is to escape tax. See *Arctic Ice Machine Co.*, 23 B. T. A. 1223.

So far we have considered the question from the viewpoint urged by the respondent, namely, that the acquisition of stock and the liquidation of the two companies should be considered as separate transactions. It is our opinion, however, that the phrase " in connection with a reorganization " permits, if it does not require, an examination of the several steps taken which culminated in the taxpayer's acquisition of the Penn and Manor Companies' assets. It appears from the contract under which the taxpayer acquired the stock that the primary purpose of the transaction was to insure to the taxpayer an adequate supply of sand and gravel. Obviously, the most direct method of accomplishing this end would be to purchase sand and gravel deposits. Presumably this direct method was not feasible and so it adopted the plan set forth at the outset of this opinion. That plan, as carried out, was in substance and effect a purchase of stock for cash, followed by a cancellation of the stock and liquidation and dissolution of the companies owning the properties that the taxpayer wanted. The taxpayer issued some preferred stock temporarily as a part of the purchase price, but within the year that was taken up and redeemed at par. When the transaction was consummated within the year 1924 the taxpayer had paid out cash for its newly acquired properties, and the old stockholders of the Penn and Manor Companies disappeared from the picture. This, in our opinion, was not a reorganiaztion within the purview of the statute, but rather is analogous to the situations present in the *Pinellas Ice* and *Cortland Specialty Co.* cases, *supra*, which were held to be sales rather than nontaxable reorganizations.

We think little need be said to distinguish these cases from *Mente & Co.*, 24 B. T. A. 401, cited by respondent. In that case there was an exchange of stock of the old company for stock and bonds of the new company, followed by a transfer of assets and dissolution of the old company. When the several steps in the transaction were completed the several stockholders of the old company were stockholders in the new one. That case did not involve a purchase for cash and the elimination of the old stockholders which are significant factors in the present cases.

We conclude that the transactions in 1924 whereby the taxpayer acquired the assets of the Penn and Manor Companies did not constitute a reorganization, but that the liquidation of the companies following the acquisition of their stock was a transaction on which gain or loss is recognized by the statute, and the taxpayer is entitled to use cost of the assets to it as a basis for depreciation and depletion.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

VAN FOSSAN dissents.