DOLOMITE, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60661.   Promulgated August 29, 1933.

*George P. Bickford, Esq.*, for the petitioner.
*Dean Kimball, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: The sole issue in this proceeding is whether the proper basis for depletion of rock deposits formerly owned by the Stone Co. is their original cost to it or is their cost to the petitioner as measured by the fair market value of the preferred stock of the Sturgeon Bay Co. transferred to the Stone Co. in payment for all of the latter company's stock, and hence for the control and possession of its assets, including such deposits.

Section 114 (b) (1) of the Revenue Act of 1928 provides:

The basis upon which depletion is to be allowed in respect of any property shall be the same as is provided in section 113 for the purpose of determining the gain or loss upon the sale or other disposition of such property * * *.

Section 113 of the Revenue Act of 1928 provides:

SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

*       *       *       *       *       *       *

(7) TRANSFERS TO CORPORATION WHERE CONTROL OF PROPERTY REMAINS IN SAME PERSONS.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. * * *

Corresponding provisions of the Revenue Act of 1926 are similar.

The respondent maintains that the case at bar comes within the exception of section 113 (a) (7) and that the basis for depletion is the cost of the rock deposits to the Stone Co., or $30,000. The petitioner contends that the proper figure upon which depletion should be computed is $201,701.39, the actual price paid for the deposits in the transactions set forth in the findings of fact, as governed by section 113 (a).

The requirements established by section 113 (a) (7) are:

(1) The property must have been acquired after December 31, 1917;

(2) The property must have been acquired in connection with the reorganization;

(3) Immediately after the transfer of the property an interest or control in such property of 80 percent or more must have remained in the same persons or any of them.

All three requirements must be met in order that the case may come within the exception. Failure to meet any one of them renders the provisions inoperative.

It is obvious that the property was acquired after December 31, 1917.

The first issue, therefore, is whether or not under all the attendant circumstances a reorganization actually took place. The petitioner claims that the exchange of stock between the Stone Co. and the Sturgeon Bay Co. and the transfer of the assets from the Stone Co. to the Sturgeon Bay Co. were two entirely separate and distinct transactions. The respondent contends that they were merely successive steps in a " reorganization " as contemplated by the statute.

Section 112 of the Revenue Act of 1928 provides:

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

\* \* \* \* \* \* \*

(g) *Distribution of stock on reorganization.*—If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

\* \* \* \* \* \* \*

(i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

(2) The term " a party to a reorganization " includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

(j) *Definition of control.*—As used in this section the term " control " means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

In this situation it is necessary to examine the facts to ascertain whether or not there was a reorganization as above defined. The

petitioner desired to secure rock deposits of a certain character and in a convenient location. It found them in Door County, Wisconsin, together with a plant and equipment in active operation owned by the Leathem D. Smith Stone Co. It took steps to obtain control and possession of the property. That was accomplished by means of the organization of the new corporation, the Sturgeon Bay Co., the transfer to it of the stock of the Stone Co. in exchange for its preferred stock issued to the Stone Co.'s stockholders, the payment of the Stone Co.'s current liabilities, which amounted to $150,000 in excess of its current assets, and the agreement to purchase the preferred stock from the Stone Co.'s stockholders pursuant to a definite schedule. The Stone Co.'s stockholders likewise agreed to sell their preferred stock according to that contract. The petitioner owned all the common stock of its subsidiary, the Sturgeon Bay Co.

In *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937, the court said:

When subdivision (h) (1) (A) included in its definition of "merger or consolidation" the "acquisition by one corporation of * * * substantially all the properties of another," it did this so that the receipt of property by the corporation surviving the merger might serve to effect a reorganization as does an acquisition of stock. Each transaction presupposed a continuance of interest on the part of the transferor in the properties transferred. Such a limitation inheres in the conventional meaning of "merger and consolidation" and is implicit in almost every line of section 203 which we have quoted. * * * In defining "reorganization" section 203 of the Revenue Act gives the widest room for all kinds of changes in corporate structure but does not abandon the primary requisite that there must be some continuity of interest on the part of the transferor corporation or its stockholders in order to secure exemption. Reorganization presupposes continuance of business under modified corporate forms.

In *Warner Co.*, 26 B.T.A. 1225, a case in some respects similar to the one under consideration, the petitioner agreed to repurchase at par and for cash $300,000 of its preferred stock at the rate of at least $50,000 per year. The Warner Co. was permitted to anticipate such payments and did so by repurchasing all of the preferred stock for cash during the taxable year. The companies whose stock was purchased by the Warner Co. were liquidated shortly thereafter.

In that case we held that the transaction did not constitute a reorganization, but a liquidation in which a gain was recognized and the acquiring corporation might use the cost to it of the property so acquired as the basis for computing depreciation and depletion. There we said:

While it may be argued that there was a continuity of interest, inasmuch as the taxpayer owned all the stock of the two companies and after liquidation it owned all the assets, we think that the statute, as construed in the cited cases, was not intended to apply to cases of mere liquidation, but was meant rather to comprehend those situations where there is a merger or consolidation and

the stockholders of the old corporation receive for their holdings a substantially similar interest in the new or merged corporation. In construing the sections of the statute applicable to reorganizations it must be remembered that the fundamental purpose of the statute with respect to recognition of gain or loss from sales and exchanges is expressed in section 203 (a) as follows:. "Upon the sale or exchange of property the entire amount of gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section."

Under this provision of the statute it is necessary that the given transaction must come clearly within the exceptions set out in the statute if the gain realized is to escape tax. See *Arctic Ice Machine Co.*, 23 B.T.A. 1223.

In the case at bar it was the obvious purpose of the Stone Co.'s stockholders to dispose of their stone plant, including the rock deposits, and to divest themselves of all interest in the enterprise. In order to do so they sold their common stock in the company, thereby losing control thereof and received in exchange the preferred stock of the Sturgeon Bay Co. But the preferred stock of the latter company was not at all similar to the common stock of the former. The preferred stock had no voting power (which was lodged in the 1,000 shares of common stock owned by the petitioner) except upon default. All the preferred stock was subject to repurchase according to a prescribed schedule. The preferred stock likewise was redeemable on any dividend date plus a stated premium. Repurchase was to begin immediately and to continue until the Stone Co.'s stockholders had disposed of all of such stock. The entire issue of preferred stock was so repurchased in accordance with the contract. The temporary possession of the preferred stock did not preserve in the Stone Co.'s stockholders that kind or degree of interest requisite to bring the transaction within the rule laid down in the *Warner* case. Under such circumstances we do not believe that the Stone Co.'s stockholders received for their holdings a substantially similar interest in the new corporation.

Furthermore, we are of the opinion that the transfer of the Stone Co.'s assets to the Sturgeon Bay Co. and its subsequent liquidation were not essentially a part of a " reorganization " as defined by the statute. The prime purpose of the entire plan was to transfer to the petitioner the control and disposition of an active stone plant. On October 26, 1927, it was immaterial to the purchaser how the plant was to be operated. While the agreement of that date provides: " It is contemplated that after the exchange of the stock herein provided for all of the property and assets of the Stone Company *may* hereafter be transferred to the new corporation " (Italics ours), yet that same contract contains the significant statement:

The New Corporation shall contract with the said Leathem D. Smith that *it or* the *Stone Company* whichever operates the present plant or any *other* purchaser of the Stone Company's plant in operating the same will give

Leathem D. Smith, or such company as he may designate, a preference * * * [Italics ours.]

It is apparent, therefore, that the determination to transfer the Stone Co.'s assets to the Sturgeon Bay Co. and to dissolve the former corporation was an action definitely decided upon after October 26, 1927, and was not an essential factor in the transaction initiated and controlled by the contract of that date.

The statute relating to liquidation, section 115 (c) of the Revenue Act of 1928 (identical with section 201 (c) of the Revenue Act of 1926) must apply. The gain thereunder inures to the distributee. The value of the property sold in liquidation measures the gain to the distributee. It thereupon becomes cost to the purchaser and the basis for depletion, as provided by section 114 (b) (1) of the Revenue Act of 1928.

Likewise it is doubtful if the third requirement of section 113 (a) (7) has been met. The property in question was the rock deposits sold to the Sturgeon Bay Co. by the Stone Co. pursuant to the resolutions of the latter company adopted November 30, 1927. The actual transfer of the assets was made on December 2, 1927. Under the contract of October 26, 1927, between the petitioner and Leathem D. Smith, the petitioner agreed to purchase from Smith and others on or before November 7, 1927, 500 shares of the preferred stock of the Sturgeon Bay Co. and to purchase the remaining 4,500 shares of its preferred stock in annual installments. The facts show that such initial purchase was so made and that subsequent purchases of preferred stock were made in accordance with the contract until approximately $200,000 was so paid in cash. Notes were given for the balance.

Therefore, on November 7, 1927, the stockholders of the Stone Co. owned 4,500 shares of the preferred stock of the Sturgeon Bay Co. with no voting power, the petitioner owned 500 shares of such stock and also 1,000 shares of its common stock which had been purchased for cash. The record does not disclose the value of the shares of common stock but the respondent's counsel states in his brief: We are entitled to assume that each share of preferred stock represented at least as large an interest in the company as each share of its common stock." On that basis, at the time of the transfer of the property on December 2, 1927, the old stockholders of the Stone Co. owned only 75 percent of the stock of the Sturgeon Bay Co., obviously less than that required by the statute.

We conclude, therefore, that the petitioner is entitled to use as a basis of depletion the sum of $201,982.04, representing the cost (and fair market value) of the rock deposits to the Sturgeon Bay Co., the petitioner's subsidiary.

*Decision will be entered under Rule 50.*