JOHN C. SHAFFER, PETITIONER, v. COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 50086, 59511.    Promulgated August 31, 1933.

*Vincent J. Heffernan, Esq.*, for the petitioner.
*D. P. Kimball, Esq.*, and *E. C. Adams, Esq.*, for the respondent.

OPINION.

I.

ARUNDELL: The petitioner contends that he sustained a deductible loss of $344,882.62 in 1924 upon the disposition of his interest in the Louisville Herald Co. to Brown; that, as a result of that loss, he sustained a statutory net loss for 1924, within the meaning of section 206 (e) of the Revenue Act of 1926, which is deductible in computing net income for 1925; that he sustained a further loss in 1925, in connection with the disposition, by reason of his payment of $2,850 to Badger and Gorham in settlement of the suit against the Louisville Herald Co., which loss is properly deductible in computing net income for that year; that in the settlement effected with Brown in 1926 by which he accepted $100,000 cash in lieu of $200,000 par value of preferred stock of the reorganized company, he sustained a further loss of $100,000 in that year; that he sustained an additional loss in 1926, in connection with the disposition, by reason of his payment in that year of additional sums aggregating $6,948.88; and that, as the result of said losses in 1926 and other losses of that year hereinafter to be considered, he sustained a statutory net loss for that year, within the meaning of section 206 (a) of the Revenue Act of 1926, which is deductible in computing net income for 1927

and, to the extent of the excess of the net loss over the net income of 1927, in computing net income for 1928.

The respondent contends that the transaction by which petitioner disposed of his interest in the Louisville Herald Co. to Brown was not completed and closed in 1924 or 1925 and, consequently, any losses in connection therewith were not sustained in those years; that, even if such losses were sustained in 1924 and 1925, they resulted from an exchange, in pursuance of a plan of reorganization, of securities in a corporation a party to the reorganization for securities in another corporation a party to the reorganization and money, and, therefore, by section 203 (f) of the Revenue Acts of 1924 and 1926, such losses could not be recognized for income tax purposes; and that the losses sustained by petitioner in 1924 and 1926, if any, in connection with this disposition, were in part capital losses, within the meaning of sections 206 (a) (2) of the 1924 and 1926 Acts, which, by those statutory provisions, are to be deducted, in computing statutory net losses, only to the extent of the capital gains, and, by reason of such limitations, no statutory net losses were sustained in either of the aforementioned years.

The stipulation does not disclose the basis upon which the petitioner kept his accounts and computed taxable net income.

We will consider first the respondent's contention that the transaction between the petitioner and Brown involved an exchange in pursuance of a plan of reorganization, the result of which, by section 203 (f) of the applicable statutes, is not to be recognized for the purposes of the tax. Section 203 provides, *inter alia*, that "(a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section." There follows in separate subdivisions of that section an enumeration of the exceptions referred to. The provisions of section 203 indicate that "it is the exceptional case alone in which gain or loss is not to be recognized," *Arctic Ice Machine Co.*, 23 B.T.A. 1223; and that "it is necessary that the given transaction come clearly within the exceptions set out in the statute," *Warner Co.*, 26 B.T.A. 1225.

Subdivision (f) of section 203, upon which the respondent relies, reads: "If an exchange would be within the provisions of paragraph (1), (2), (3), or (4) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain or loss, but also of other property or money, then no loss from the exchange shall be recognized." And paragraph (2) of subdivision (b) reads: "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pur-

suance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

We need not go into the question as to whether there was a reorganization of the Louisville Herald Co. within the meaning of subdivision (h) (1) of section 203, which, of course, is a major premise of respondent's contention. We may, for the sake of argument, assume that to be the case; although it is evident that when the sale agreement was entered into the assumed reorganization could have been but a mere conception in the mind of Brown. But in order that the transaction may be brought within the exception of subdivision (f), the exchange must be "in pursuance of the plan of reorganization." In other words, the exchange contemplated by subdivisions (b) (2) and (f) is one in which there is, as an integral and essential part of the plan or scheme of reorganization, a substitution for the taxpayer's interest in the merged or consolidated company of a substantially similar interest in the surviving or new company, or, at least, a continuation of his interest based upon the new capitalization of the existing company; and we apprehend that generally it is to be effected by direct exchange between the corporate parties to the reorganization and their security holders. This requirement of subdivision (f) is not met by the facts of this case.

When the petitioner sold his security holdings to Brown for cash and new securities of that company or its successor if such successor were organized, no plan of reorganization had been adopted. Whatever securities he eventually would receive from Brown would come to him not by virtue of any interest which he held in the Louisville Herald Co. that would entitle him to participate in any reorganization, but as part of the purchase price of that interest. In any plan of reorganization of the Louisville Herald Co. it would be Brown and not the petitioner who would be entitled to exchange that interest for a similar interest in the reorganized company; and it was only by virtue of Brown's right in that respect that he could expect to deliver the new securities in part payment of the purchase price. The respondent's contention that the transaction is within the provisions of subdivision (f) of section 203 is without merit.

The next question to be considered is whether the petitioner sustained losses in 1924 and 1925 in connection with the aforementioned transaction which may be deducted in computing taxable net income of those years. The amount of the petitioner's total loss from the transaction is not in dispute; it is merely a question as to when the loss was sustained.

By section 214 (a) of the Revenue Acts of 1924 and 1926 there are to be allowed as deductions in computing net income: "(4) Losses

sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business; " and "(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business * * *."

In general, the statute is concerned only with realized losses, *Weiss* v. *Weiner*, 279 U.S. 333; though "exception is made, however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction, in certain circumstances, before they are absolutely realized," *Lucas* v. *American Code Co.*, 280 U.S. 445. They must be fixed by identifiable events, *United States* v. *White Dental Mfg. Co.*, 274 U.S. 398; and, as a rule, evidenced by closed and completed transactions, art. 141, Reg. 65 and 69; and *Ewing Thomas Converter Co.* v. *McCaughn*, 43 Fed. (2d) 503; certiorari denied, 282 U.S. 897.

By the close of 1924, petitioner, pursuant to his agreement with Brown, had delivered all but 154 shares of the outstanding capital stock of the Louisville Herald Co. and all of the outstanding bonds of that company, and he had paid $230,150.01 of a total of $239,948.89 indebtedness of that company that he was called upon to pay under the agreement. Delivery of the 154 shares and payment of an additional indebtedness, including the claim of Badger and Gorham, of $9,798.88, of which $2,850 was paid in 1925 and $6,948.88 in 1926, represented the extent of his remaining obligations under the agreement. As to Brown, he had made the cash payments to petitioner, totaling $400,000, as provided in the agreement, and it remained for him to deliver the $200,000 par value of preferred stock of the successor company which had been organized. To the close of the year, the petitioner had incurred costs, in the acquisition of his investments in the Louisville Herald Co. and in carrying out his agreement with Brown, totaling $929,882.62, which together with the selling expenses he incurred, represented a total outlay of $944,882.62. For the investment represented by that cash outlay he was to receive a maximum consideration of $400,000 cash and $200,000 par value of preferred stock, the fair market value of which, as of the date of delivery, in view of the provisions of the sale agreement governing the issuance of that stock, could not, in our opinion, exceed its par value. Thus, identifiable events of 1924 and 1925 established, before the transaction was entirely closed, losses, " certain in fact and ascertainable in amount," of $344,882.62 and $2,850, respectively; and these losses could not be reduced one iota by any future events contemplated by the agreement. As it turned out, the petitioner sustained a further substantial loss in 1926, when the parties effected a final settlement under their agreement. We

hold that the petitioner is entitled to deduct the losses of $344,882.62 and $2,850 in computing taxable net income of 1924 and 1925, respectively.

The next question is whether the losses sustained by petitioner in 1924 and 1926 in the aforementioned transaction may be deducted from income in computing the statutory net losses of those years.

Section 206 (a) of the 1924 and 1926 Acts defines the term "net loss" as "the excess of the deductions allowed by section 214 * * * over the gross income, with the following exceptions and limitations: (1) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall be allowed only to the extent of the amount of the gross income not derived from such trade or business; (2) In the case of a taxpayer other than a corporation, deductions for capital losses otherwise allowed by law shall be allowed only to the extent of the capital gains * * *." Section 208 (a) of the same acts defines the term "capital loss" as "(2) * * * deductible loss resulting from the sale or exchange of capital assets;" and the term "capital assets" is defined as "(8) * * * property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business."

At the time the petitioner entered into the agreement with Brown he owned 2,346 shares of the capital stock of the Louisville Herald Co. and $111,000 face amount of that company's bonds. He had acquired these shares in 1910, and the bonds prior to 1920. He was not a dealer in securities; and he was not engaged in buying and selling newspaper publishing corporations as a business. The stipulation states that the petitioner " was engaged in the trade or business of editing and publishing newspapers through the medium of several corporations which he owned and controlled." There is no element of buying and selling in that business, and inventories are foreign to it. His security holdings in the Louisville Herald Co. were merely the medium through which he exercised control of the business, and not his " stock in trade * * * or other property of a kind which would properly be included in the inventory * * *, or property held * * * primarily for sale in the course of his trade or business." The aforementioned securities were capital assets within the meaning of section 208 (a) (8) of the applicable statutes, and the loss sustained from the disposition thereof is deductible, under section 206 (a) (2), only to the extent of the capital gains.

The petitioner argues, however, that the ultimate loss which he sustained upon the transaction was attributable wholly to expenditures and voluntary cancellation of indebtedness of the Louisville Herald Co. within two years of the sale, and, consequently, that the loss was not a capital loss. Assuming, as petitioner contends, that these expenditures and canceled indebtedness constitute, at least in part, additional cost of the 2,346 shares, the fact that they were incurred or canceled within two years of the sale is of no significance; the controlling factor, and the thing which stamps the loss, so far as attributable to additional costs of said shares, as a capital loss, is that the shares to which such expenditures relate were held by him for more than two years. In other words, the two-year period mentioned in section 208 (a) (8) begins to run from the date of petitioner's acquisition of the property, and not from the date of payment therefor or the date when additional costs in respect thereof were incurred.

The petitioner, relying upon *M. P. Sturdivant*, 23 B.T.A. 1385, and *John H. Watson, Jr.*, 27 B.T.A. 463, further contends that the payments he made in 1924, in pursuance of the sale agreement, in liquidation of the indebtedness of the Louisville Herald Co., namely, $61,850 to the J. C. Shaffer Grain Co., $105,434.47 to the Star Publishing Co., and $62,865.54 of miscellaneous accounts, a total of $230,150.01, and $6,948.88 of miscellaneous accounts in 1926, were not connected with any sale or exchange and, consequently, are not capital losses. Neither of the cases relied upon appears to have any bearing whatever upon the proposition so advanced. We are of the opinion that the loss suffered by petitioner in piecemeal in 1924, 1925, and 1926 was attributable to the sale of capital and noncapital assets. The petitioner agreed to sell to Brown all of the outstanding capital stock and bonds of the Louisville Herald Co., for $600,000, but he also agreed to pay a portion of the indebtedness of that company and to save it and Brown harmless against any claim or suit arising out of acts committed prior to January 17, 1924, and these latter undertakings eventually cost him in the neighborhood of $240,000. Had Brown assumed those undertakings himself, unquestionably the consideration mentioned in the sale agreement would have been correspondingly less and, in that event, there would have been no question whatever that the loss was sustained upon the sale of the shares and bonds of the Louisville Herald Co. We do not believe that the ultimate loss is any the less attributable to that source because of the form of the agreement and the manner in which the transaction was carried out. The sale of the securities and the petitioner's payment of the indebtedness of and claim against that company were one and not separate transactions, and

whatever loss was incurred was incident to the sale of the securities. Of those securities we have already held that the 2,346 shares and $111,000 face amount of bonds were capital assets; and as to the remaining approximately $70,000 face amount of bonds, they were noncapital assets, since they were acquired at or about the date of the sale agreement.

However, even if the losses represented by the aforesaid payments in 1924, 1925, and 1926 were not attributable to a sale or exchange of property, but constitute, as petitioner contends, ordinary losses, still they could not be deducted in computing the statutory net losses, unless attributable to the operation of a trade or business, or to a transaction entered into for profit. We hold, upon authority of *Burnet* v. *Clark*, 287 U.S. 410, that the losses were not sustained in the operation of a trade or business regularly carried on by the petitioner; and the circumstances under which the payments were made indicate clearly that they were not made for profit. Hence, it is only by reason of the fact that the payments were linked with and, therefore, constituted losses upon the sale of petitioner's security holdings in the Louisville Herald Co. that they can be given any consideration at all under the net loss provisions of the applicable statutes.

The stipulation sets forth that in 1926 the petitioner realized capital net gains in respect of items not here in dispute, but it is silent as to any capital gains for 1924. We must assume, therefore, that there were no capital gains for 1924, and, accordingly, hold that in computing the statutory net loss of that year no part of the loss of $344,882.62 sustained by the petitioner upon the sale of his interest in the Louisville Herald Co. that may be attributable to the sale of capital assets may be deducted. As to that part of the loss attributable to the sale of noncapital assets, the amount thereof has not been stipulated, and if it is determinable at all under the stipulated facts, it must be on the theory that it bears the same ratio to the total loss ($344,882.62) as the cost of those assets ($59,769.81) bears to the total cost of the capital and noncapital assets ($944,882.62). The only other possible conclusion under the stipulated facts is that the noncapital assets, having been purchased by the petitioner within 10 days of the sale agreement, are represented in the selling price at an amount equal to cost of acquisition to the petitioner, and that the entire loss, therefore, is attributable to the capital assets. Any deduction for noncapital loss, computed as above indicated, would not produce a statutory net loss for 1924.

## II.

The next question is whether, as the result of a further loss sustained in 1926 in connection with the disposition of his interest in

the Louisville Herald Co. in the amount of $106,948.88 and a loss of $475,055.48 also sustained in that year in connection with the disposition of his interest in the Denver Publishing Co., the petitioner sustained a statutory net loss for 1926 which may be deducted in computing taxable net income for 1927 and 1928.

The transaction involving the petitioner's interest in the Denver Publishing Co. apparently was completed and closed in 1926; and the pending question is whether the loss sustained by the petitioner in that transaction may be deducted from income in computing the statutory net loss of that year. In its important aspects, the transaction is substantially similar to the one in which petitioner disposed of his interest in the Louisville Herald Co.; and the same principles of law and same reasoning as were applied in the disposition of the earlier transaction apply with equal force to the one now under consideration. In this transaction the petitioner disposed of his interest in the Denver Publishing Co. at a loss of $475,055.48. The loss was not sustained in the operation of a trade or business, but was directly attributable to the disposition of his security holdings in the Denver Publishing Co. The greater part of the securities so disposed of had been held by the petitioner for more than two years, while the remainder had been held for a lesser period of time. These securities were not his " stock in trade  *  *  *  or other property of a kind which would properly be included in the inventory  *  *  *, or property held  *  *  *  primarily for sale in the course of his trade or business." Consequently, as to the major part of the securities, they were capital assets; and the loss sustained in connection with their disposition is deductible, in computing the statutory net loss for 1926, only to the extent of the capital gains for that year. The parties have stipulated that the petitioner realized capital net gains in 1926 of $23,691.57. The allowance of a deduction in the latter amount, for capital loss, would not create a statutory net loss for 1926; and, since under section 206 (a) (1) deductions otherwise allowed by law not attributable to the operation of a trade or business may, in computing the statutory net loss, be allowed only to the extent of the amount of the gross income not derived from trade or business, it is apparent that any deduction for the portion of the loss attributable to noncapital assets could not create a statutory net loss for that year. A like conclusion must be made in respect of the further loss of $106,948.88 sustained in 1926 in connection with the petitioner's disposition of his interest in the Louisville Herald Co.

*Decision will be entered under Rule 50.*