PRAIRIE OIL AND GAS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57117.  Promulgated October 17, 1933.

*H. B. McCawley, Esq.*, and *S. Milton Simpson, Esq.*, for the petitioner.
*Bruce A. Low, Esq.*, and *T. G. Histon, Esq.*, for the respondent.

OPINION.

McMAHON: This is a proceeding for the redetermination of an asserted deficiency in income taxes for the calendar year 1928 in the amount of $126,333.18.

It is alleged that the respondent erred in failing to allow as a deduction from the gross income of the petitioner for the calendar year 1928 the sum of $81,122.61, representing an allowance for depletion actually sustained upon oil-producing properties owned and operated by the petitioner.

On March 8, 1926, the petitioner entered into a contract with representatives of the Olean Petroleum Co. and its stockholders which is referred to hereinafter in a stipulation as Exhibit A, and, except for the signatures of the parties, is as follows:

ARTICLES OF AGREEMENT, made and entered into this the Eighth day of March, 1926, by and between George A. Larkin and James P. Quigley, of Olean, New York, representing the Olean Petroleum Company, a corporation organized under the laws of the State of Delaware, and also representing the stockholders of said Olean Petroleum Company, hereinafter referred to as "Sellers", parties of the first part; and the Prairie Oil and Gas Company, a Kansas corporation, hereinafter referred to as the "Buyer", party of the second part.

WITNESSETH THAT, for and in consideration of One Dollar ($1.00) and other good and valuable consideration to them in hand paid, receipt of which is hereby acknowledged, sellers to hereby agree to sell, assign and deliver to buyer One Hundred per cent (100%) of the issued and outstanding shares of the capital stock of said Olean Petroleum Company for the price of Three Million Three Hundred and Fifty Thousand Dollars ($3,350,000.00) payable in cash when the titles as hereinafter referred to are approved. Sellers may have twenty-five (25) days within which to deliver said shares of stock. If for any reason sellers shall be unable to deliver the said 100% of the shares of said capital stock, said sellers agree and undertake, for and on behalf of said Olean Petroleum Company, to sell and deliver to buyer all the tangible physical properties of said Olean Petroleum Company wherever located; it being understood that said properties consist, in the main, of oil and gas leaseholds, premises and properties located in the States of Oklahoma and New Mexico, for the said price of $3,350,000.00, payable as above. The physical properties above referred to consist of all the physical assets of every kind and character of the Olean Petroleum Company, consisting of real and personal property, real estate, leases, equipment, supplies, pipe, casing, tools, automobiles, furniture and fixtures, oil and all property of whatever kind and character pertaining to the operation of the leases now producing and in process of development, and all physical properties shown on the books to belong to the Olean Petroleum Company, not including cash in banks or bills and accounts receivable; the said cash in banks and accounts and bills receivable to remain the property of sellers. All of the said properties to be free and clear of all taxes, liens, incumbrances of all kinds and to be delivered with good merchantable title to the buyer.

Delivery of said physical properties shall be made as of Seven o'clock a.m., March 3, 1926; it being understood that buyer shall be entitled to all oil and gas produced on any oil or gas property in any tanks or pipe lines as of said Seven A.M., of March 3, 1926. Said buyer shall be entitled to said properties as of the said hour and date and will be liable for all operating expenses in connection therewith from and after the said hour and said date, and shall be entitled to direct the operations of the same through its agent.

It is understood that the sellers will pay all drilling cost on well or wells to the depth at which the well or wells were drilled as of Seven A.M., March 3, 1926.

It is further understood that pipe and casing in the possession of and not delivered by railroad company as of Seven A.M., March 3, 1926, shall be paid for by the buyer.

In the event of sellers delivering to buyer the said shares of capital stock, it is understood that the said delivery of the stock shall transfer full and complete control of the Olean Petroleum Company to the buyers as of Seven A.M., March 3, 1926, and that all of the foregoing provisions with reference to the passing of title to the properties and possession of the same, shall apply in the same degree and to the same extent and with like effect.

Immediately upon the execution of this contract, sellers will proceed to procure abstracts of title covering all leases and real property of every kind and nature owned by said Olean Petroleum Company and within Fifteen (15) days, shall deliver the same to the buyer, who shall have a reasonable time within which to examine the same. If any defects are discovered in said titles, the sellers shall have a reasonable opportunity to cure the same.

It is understood further that in the event of the sellers delivering to the buyer the said 100% of the capital stock of the Olean Petroleum Company, instead of a direct sale of its physical properties, that the present stockholders of the Olean Petroleum Company will and do hereby guarantee to deliver the said stock free and clear of every kind and character of lien, incumbrance or liability whatsoever. The purpose being, in the sale of this stock by the present stockholders and the puchase thereof by the buyer, to secure the properties of the Olean Petroleum Company for the price above specified, without any kind or character of lien, incumbrance or liability whatsoever, that may in any wise attach to the properties, by and through the sale and delivery to buyers, of the capital stock of the Olean Petroleum Company.

It is understood that the Olean Petroleum Company has no outstanding debts or liabilities or taxes of any kind or character and the buyer and seller are dealing with each other in the making of this contract on that assumption, and the present stockholders of the Olean Petroleum Company agree to save the buyer harmless on account of any kind or character of liability that may arise that would make the cost of the stock or properties exceed the amount of $3,350,000.00.

Buyer agrees to purchase said stock or physical properties, as the case may be, according to the price, terms and conditions set forth above.

## The parties stipulated as follows:

I. The petitioner, at all times herein referred to, was a Kansas corporation with its principal place of business and correct post-office address at Independence, Kansas.

II. On the 8th day of March, 1926, the petitioner entered into a written contract with George A. Larkin and James P. Quigley of Olean, New York, they representing the Olean Petroleum Company, a Delaware corporation, and also the stockholders of the said Olean Petroleum Company, whereby and by the terms of which it was provided that, for and in consideration of $3,350,000.00, the stockholders of the said Olean Petroleum Company agreed to sell and deliver to the petitioner, and the petitioner agreed to purchase, 100 per cent of the capital stock of the Olean Petroleum Company free and clear of incumbrance, within 25 days immediately following the 8th day of March, aforesaid; or, in the alternative, said contract further provided that if said stockholders were unable to deliver to the petitioner 100 per cent of said stock within the said period of 25 days, then, and in that event, to sell and deliver to the petitioner certain physical properties consisting of oil and gas producing properties, with equipment located thereon, as more particularly described in said contract, free

and clear of all incumbrance for the same price, $3,350,000.00. A true and correct copy of said written contract is hereto attached, and marked Exhibit A.

III. The petitioner took possession of the physical properties described in said contract immediately after the said contract (Exhibit A) was signed, and has since that time continued to operate said properties. On or about the 1st day of April 1926, or within 25 days as provided in the written contract, 100 per cent of the capital stock of the said Olean Petroleum Company was delivered by said Larkin and Quigley to the petitioner company, and the consideration named ($3,350,000.00) was paid by the petitioner company to said Larkin and Quigley for the stockholders of the Olean Petroleum Company as follows: $3,000,000.00 cash; balance by check and discharge of indebtedness of the Olean Petroleum Company coming due after properties were taken over as aforesaid.

IV. At the time the contract aforesaid was signed, the Olean Petroleum Company was possessed of other assets in the total amount of $1,077,625.25, consisting of cash, accounts and bills receivable, which said assets were all distributed to the stockholders of record prior to the delivery of the stock on April 1, 1926, as aforesaid. All liabilities of the said Olean Petroleum Company, other than those assumed by petitioner as set out in paragraph III above, were assumed by these stockholders prior to the delivery of the stock, and by them discharged.

V. Having acquired all of the capital stock of the Olean Petroleum Company, as above set forth, the petitioner company on, to wit, the 2nd day of April, 1926, distributed in complete liquidation all the assets then owned by the Olean Petroleum Company in full payment for the capital stock of the said Olean Petroleum Company, which stock was subsequently cancelled.

VI. On or about the 10th day of February, 1927, the Olean Petroleum Company filed with the Collector of Internal Revenue in and for the District of Kansas at Wichita, a corporate income tax return, executed by its officers who were also officers of the petitioner, in which it did not report any profit for the period beginning January 1, 1926 and ending March 8, 1926, as a result of this sale, and the Commissioner has not determined any profit against said company as a result of this sale.

VII. On or about the 15th day of March, 1929, the petitioner filed with the Collector of Internal Revenue, in and for the District of Kansas, at Wichita, its income and profits tax return for the calendar year 1928, in which its net income subject to tax for said year was reported. In arriving at the amount of said income, petitioner took, among others, a deduction representing an allowance for depreciation and depletion actually sustained on properties which it owned and operated during said year. In computing the deduction for depreciation and depletion sustained on properties acquired from the Olean Petroleum Company, as hereinbefore set forth, petitioner used as a basis of computation, the actual cost of said properties, or $3,350,000.00. The respondent, however, after an examination of the return and records of the petitioner company, used as a basis for the computation of the deduction for depreciation and depletion actually sustained on said properties, the cost of said properties in the hands of the Olean Petroleum Company, and as the result thereof reduced the amount of the allowable deduction for depletion sustained on said properties, thereby increasing the petitioner's taxable income for said year 1928, which gives rise to that part of the proposed deficiency in question.

## The parties stipulated further as follows:

It is hereby stipulated and agreed by the parties, by and through their counsel of record, that in the event the Board decides the above-captioned appeal

adversely to the respondent, that the income of the petitioner for the year 1928, as shown in the sixty-day letter, may be reduced by the sum of $81,122.61.

We are here called upon to determine the proper basis to be used by the petitioner in computing a deduction for the calendar year 1928 for depreciation and depletion sustained on properties acquired by the petitioner from the Olean Petroleum Co. We are governed by the Revenue Act of 1928, pertinent provisions of which are set forth in the margin.[1] The respondent held that the transaction whereby such properties were acquired by the petitioner constituted a reorganization within the meaning of the statute, and that the proper basis to be used is the cost of such properties in the hands of the Olean Petroleum Co. Petitioner contends that the proper basis is $3,350,000, the actual cost of such properties to the petitioner.

In a case involving the income tax liability of this same taxpayer for the year 1926, *Prairie Oil & Gas Co.* v. *Motter*, 66 Fed. (2d) 309, reversing the decision of the United States District Court for the District of Kansas in *Prairie Oil & Gas Co.* v. *Motter*, 1 Fed. Supp. 464, the circuit court held that the same transaction involved in the instant proceeding constituted a sale of the assets of the Olean Petroleum Co. to the petitioner, and not a

---

[1] SEC. 112. (i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholder or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

\*        \*        \*        \*        \*        \*        \*

SEC. 113. (a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\*        \*        \*        \*        \*        \*        \*

(7) TRANSFERS TO CORPORATION WHERE CONTROL OF PROPERTY REMAINS IN SAME PERSONS.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. \*  \*  \*

\*        \*        \*        \*        \*        \*        \*

SEC. 114. (a) *Basis for depreciation.*—The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in section 113 for the purpose of determining the gain or loss upon the sale or other disposition of such property.

(b) *Basis for Depletion.*—

(1) GENERAL RULE.—The basis upon which depletion is to be allowed in respect of any property shall be the same as is provided in section 113 for the purpose of determining the gain or loss upon the sale or other disposition of such property, except \*  \*  \*  [exceptions not here material].

reorganization within the meaning of the Revenue Act of 1926. The circuit court there held that the proper basis for depletion deductions under the Revenue Act of 1926 was $3,350,000, the cost of the property to the taxpayer. That court was there concerned with sections 204 (a) (7), 204 (c), and 203 (h) (1) of the Revenue Act of 1926, whereas we are here concerned with the provisions of the Revenue Act of 1928. However, the corresponding provisions of the two acts are similar.

We agree with the holding of the circuit court in *Prairie Oil & Gas Co.* v. *Motter, supra*, wherein the court cites with approval and quotes from *Warner Co.*, 26 B.T.A. 1225. For the discussions and other supporting authorities, see those cases. Upon the authority of those cases we hold that the proper basis to be used in the determination of the depreciation and depletion deduction for the calendar year 1928 is $3,350,000, the cost of the properties to the petitioner.

In accordance with the stipulation entered into between the parties, the income of the petitioner for the calendar year 1928 as shown in the notice of deficiency will be reduced by the sum of $81,122.61.

*Decision will be entered under Rule 50.*